Filed 6/12/13 (unmodified opinion attached)

# IN THE SUPREME COURT OF CALIFORNIA

THE PEOPLE, )
)
    Plaintiff and Respondent, )
) S192536
    v. )
) Ct.App. 6 H035123
CHRISTINA MARIE ANZALONE, )
) Santa Clara County
    Defendant and Appellant. ) Super. Ct. No. CC935164
_____ )

## ORDER MODIFYING OPINION AND
## DENYING PETITION FOR REHEARING

THE COURT:

The opinion in this matter filed on April 15, 2013, and appearing at 56 Cal.4th 545, is modified as follows:

On page 561, the disposition is modified to read as follows: "The judgment of the Court of Appeal is reversed, and the matter is remanded to that court for consideration of defendant's remaining claims."

The modification changes the judgment.

The petition for rehearing is denied.

# IN THE SUPREME COURT OF CALIFORNIA

|  |  |  |
|---|---|---|
| THE PEOPLE, | ) | |
| | ) | |
| Plaintiff and Respondent, | ) | |
| | ) | S192536 |
| v. | ) | |
| | ) | Ct.App. 6 H035123 |
| CHRISTINA MARIE ANZALONE, | ) | |
| | ) | Santa Clara County |
| Defendant and Appellant. | ) | Super. Ct. No. CC935164 |
| | ) | |
| | ) | |
| | ) | |
| _____ | ) | |

Penal Code section 1149 provides, "When the jury appear they must be asked by the Court, or Clerk, whether they have agreed upon their verdict, and if the foreman answers in the affirmative, they must, on being required, declare the same."[1] Here, the court failed to follow this mandated procedure. The case turns on whether the error is structural error, and thus reversible per se, or trial error subject to harmless error review. For the reasons set forth below, the error was not structural. Accordingly, we reverse the Court of Appeal's judgment.

---

[1] Unless otherwise indicated, all statutory references are to the Penal Code.

1

## I. BACKGROUND

On February 22, 2009, defendant Christina Marie Anzalone went to the front desk of a San Jose motel and asked the owner if she could speak to Leon Wallace, the maintenance man. The owner said that Wallace was not in and refused to let her go to Wallace's room. Defendant accused the owner of lying and left. She returned a few minutes later, pushed over a computer, pulled a knife, and threatened to kill the owner. Police were called and defendant left.

Later that day, defendant was speaking with Kimberly Malott when she saw Kimberly's husband, Richard. Defendant accused Richard of abusing Kimberly, approached him, and struck him in the chest. Richard initially walked away, but turned around. Defendant threw a bagel and an open knife at him, hitting him in the chest with the butt end of the weapon. He picked up the knife, then got in his truck with Kimberly. Defendant blocked their exit and spat on the windshield. As Richard and Kimberly tried to leave, defendant grabbed onto the truck's side mirror and broke the radio antenna. Defendant was charged with making a criminal threat against the motel owner (§ 422), and assault with a deadly weapon on Richard (§ 245, subd. (a)(1)), with allegations that she personally used a deadly weapon in both counts (§§ 667, 1192.7, 12022, subd. (b)(1)). She was also charged with misdemeanors for vandalism of Richard's truck (§ 594, subd. (a)(b)(2)(A)), and brandishing a weapon against the motel owner (§ 417, subd. (a)(1)).

On October 7, 2009, after final argument and instructions, the jury deliberated in the afternoon. The next day, after a readback of testimony, the jurors deliberated for another six minutes before informing the bailiff they had reached a verdict. The jury returned to the courtroom and the following proceedings took place:

2

"THE COURT:  We're in session in Docket CC 935164.  Attorneys are present, Mr. Hultgren and his client and DA Ms. Frazier.

"Jury has indicated they have a verdict.  We'll bring them out. Thank you.

"(Jury Present)

"THE COURT:  We're back on the record in the presence of the jury now as well.  And ladies and gentlemen, I understand you've reached a verdict.  Who is the foreperson?  Mr. (juror)?

"JUROR:  Yes sir.

"THE COURT:  Hand the verdict forms to the deputy.  I'll hand those to the clerk to read the verdict."

The verdicts were then read aloud.  Defendant was acquitted of vandalism but found guilty on the other counts.  The jury also found true both allegations of using a deadly weapon.  Neither party asked the court to poll the jury.  (See §§ 1163, 1164.)

After the verdict was read and recorded, the court addressed the jurors: "Ladies and gentlemen of the jury, you've now completed your jury service in this case and on behalf of the judges and attorneys and everyone in the court, please accept my sincere thanks for your time and effort that you put into your verdicts in this case."  The court gave jurors additional instructions with regard to administrative matters such as accepting payment for information about the case, communications with counsel, and the sealing of personal juror information.  The court concluded, "Again, I can't thank you enough for your attention during this trial.  I never say this, I'll say you're one of the best juries I've ever had as far as being prompt, attentive to the evidence.  [¶]  We notice that, we all notice it here and we talked about it and I appreciate your service.  You are now excused for at least one year and if you want to talk to the attorneys, they will be out in about three minutes in the hall, otherwise you can leave . . . ."  On December 4, 2009,

3

defendant was sentenced to a prison term of four years eight months. On appeal, defendant argued that her state constitutional right to a unanimous jury verdict was violated because the court failed to ask the jury foreperson or the jurors to affirm their verdict as required by section 1149. The Court of Appeal agreed. It went on to conclude the error was structural and, thus, reversible per se.

## II. DISCUSSION

The Attorney General argues that defendant forfeited her claim by failing to object to the trial court's alleged failure to comply with section 1149. This court has held that the failure to object to an incomplete polling of the jury forfeits any claim of error on appeal. (*Keener v. Jeld-Wen, Inc.* (2009) 46 Cal.4th 247, 262-270 (*Keener*); see *People v. Wright* (1990) 52 Cal.3d 367, 415; *People v. Lessard* (1962) 58 Cal.2d 447, 452 (*Lessard*).)

In the extensive discussion of forfeiture in *Keener*, we cited with approval authorities stating that the general rule in both civil and criminal cases is that an objection to a defective verdict must be made before the jury is discharged. (*Keener*, *supra*, 46 Cal.4th at pp. 263-265.) "[T]he basis for the requirement of an objection to asserted imperfections in the polling of a jury concerning its verdict is no different from the basis for requiring objections to other equally important procedural matters at trial . . . . The requirement of an objection is premised upon the idea that a party should not sit on his or her hands, but instead must speak up and provide the court with an opportunity to address the alleged error at a time when it might be fixed." (*Id.* at pp. 265-266, fns. omitted.)

The trial court's inadvertent failure to comply with section 1149 in the present case appears analogous to an incomplete polling of the jury, and there is no apparent reason to apply a different forfeiture rule. After all, rather than an appellate court reviewing a cold record, the parties are present in the courtroom to observe the exchange between the court and the jurors, hear the court's comments,

4

understand what is transpiring, and seek any necessary clarification. That they make no objection suggests they see no reason to question whether the verdict as read accurately represents the verdict reached by the jury. The parties are in the best position to know if there is reason to suspect any juror might not be fully committed to the verdict. A party with concerns about the accuracy of the verdict may test it by polling. A party that eschews the opportunity has no cause to complain that the court failed to test the verdict's accuracy by requiring public affirmation. Accordingly, a defendant who does not object to the trial court's failure to comply with section 1149 forfeits the argument that the trial court erred.

However, notwithstanding defendant's forfeiture, we will address the merits because the case concerns an issue of statewide importance. (*People v. Braxton* (2004) 34 Cal.4th 798, 809.)

Our state Constitution provides that a defendant in a criminal case has a fundamental right to a unanimous jury verdict. (Cal. Const., art. I, § 16.)

As noted, section 1149 also requires that when the jury returns after reaching a verdict, the court or clerk must ask "whether they have agreed upon their verdict, and if the foreman answers in the affirmative, they must, on being required, declare the same." Thus, a foreperson's oral declaration may provide sufficient acknowledgment of the verdict. (See *People v. Wiley* (1931) 111 Cal.App. 622, 625.) But, if either party so requests, the jury may be polled and each juror must orally affirm the verdict. (§§ 1149, 1163, 1164.)

Sections 1163 and 1164 govern jury affirmation of the verdict by polling. Under section 1163, either party may request polling before the verdict is recorded. If any juror disagrees with the verdict, the jury must be sent out for

further deliberations.[2]  Section 1164 provides that after the verdict is recorded, either party may request that the clerk read the verdict as recorded.  If a juror dissents to the recorded verdict, the jury is sent out for further deliberations.[3]

Here, the Attorney General argues that the foreperson's statement, "Yes, sir," was an oral acknowledgement that the jury had reached a verdict.  (§ 1149.)  The Attorney General claims that "the combination of the court's stating its understanding the jury reached a verdict, its asking the foreperson to identify himself, the foreperson's complying, the court's asking the foreperson to hand the verdict forms to the bailiff, the foreperson's complying again without further qualification or comment, and the clerk's reading the verdict in the presence of the jury and the parties amounted to substantial compliance with section 1149's requirement of an acknowledgement by the foreperson that the jury had reached its verdict."

The court did not ask whether the jury had reached a verdict.  It made a statement to that effect.[4]  It then asked a particular juror if he was the foreperson. It was to this question that the juror replied, "Yes, sir."[5]  It is clear that neither the court nor the clerk actually complied with section 1149, because neither asked the

---

[2]  "When a verdict is rendered, and before it is recorded, the jury may be polled, at the request of either party, in which case they must be severally asked whether it is their verdict, and if any one answer in the negative, the jury must be sent out for further deliberation."  (§ 1163.)

[3]  "(a)  When the verdict given is receivable by the court, the clerk shall record it in full upon the minutes, and if requested by any party shall read it to the jury, and inquire of them whether it is their verdict.  If any juror disagrees, the fact shall be entered upon the minutes and the jury again sent out; but if no disagreement is expressed, the verdict is complete, and the jury shall, subject to subdivision (b), be discharged from the case."  (§ 1164, subd. (a).)

[4]  The court said, "And . . . I understand you've reached a verdict."

[5]  By order of the trial court, jurors' names and other personal identifying information were kept confidential.

6

foreperson or other members of the jury whether they had agreed to the verdict or sought to receive the foreperson's affirmation. Accordingly, the trial court failed to follow the statutory directive.[6] The defense did not object to this failure of procedure at the time, after the jury was discharged, or at the subsequent sentencing hearing. Defendant made no motion for retrial.

The Court of Appeal held that the error violated defendant's state constitutional right to a unanimous jury verdict. It stated that "although the jury deliberated and rendered a verdict, which was read in court, the lack of oral acknowledgement by the jurors individually or by the foreperson rendered the jury's verdict incomplete, defective, and invalid." The court held the defective verdict invalidated the judgment. It deemed the error structural, reasoning that it

---

[6] The clerk's minutes conflict with the reporter's transcripts. Minute entries report the court did inquire and the foreperson acknowledged that the jury had reached a verdict.

"As a general rule, a record that is in conflict will be harmonized if possible. [Citation.] If it cannot be harmonized, whether one portion of the record should prevail as against contrary statements in another portion of the record will depend on the circumstances of each particular case." (*People v. Harrison* (2005) 35 Cal.4th 208, 226.)

When adequate, the clerk's minutes can be relied upon to establish an admission and a waiver of constitutional rights even where the reporter's transcript is silent on the subject. (*People v. Malabag* (1997) 51 Cal.App.4th 1419, 1422-1423.) However, in *Malabag*, there was specific evidence that the reporter's transcript was incomplete—the transcript began in the middle of the proceedings and contained only sentencing orders. (*Id.* at p. 1422.) It was in this context that the court found the reporter's transcript was incomplete and the clerk's transcript could be used to demonstrate that certain advisements had been given. (*Id.* at pp. 1422-1423.)

Here, there is nothing to suggest that the reporter's transcript is incomplete and the Attorney General does not argue that the transcript is inconsistent or incomplete. Accordingly, we presume the court reporter accurately reported the proceedings. (See *People v. Ayala* (2000) 23 Cal.4th 225, 289 [presumption that an official duty has been performed applies to court reporters].)

7

could not apply a harmless error analysis because "[a]lthough there is ample if not overwhelming evidence to support the verdict reflected in the verdict forms, and although there is nothing in the record to suggest that the jurors did not agree with the verdict when read, it is not possible for us to know whether the foreperson would have acknowledged the verdict; and if so, whether defendant would have requested that jurors be individually polled; and if polled, whether all of the jurors would have endorsed the verdict as his or her verdict." The court erred in denoting this procedural failure as structural error.

We have recently considered the distinction between structural error and trial error. "Under article VI, section 13 of our state Constitution, trial error does not merit reversal of a judgment unless 'the error complained of has resulted in a miscarriage of justice.' Typically, a defendant who has established error under state law must demonstrate there is a reasonable probability that in the absence of the error he or she would have obtained a more favorable result. (*People v. Weaver* (2001) 26 Cal.4th 876, 968; *People v. Watson* (1956) 46 Cal.2d 818, 836.) As we have explained, however, 'under the California constitutional harmless-error provision some errors . . . are not susceptible to the "ordinary" or "generally applicable" harmless-error analysis — i.e., the *Watson* "reasonably probable" standard — and may require reversal of the judgment notwithstanding the strength of the evidence contained in the record in a particular case.' (*People v. Cahill* [(1993)] 5 Cal.4th [478,] 493.) '[T]he kinds of errors that, regardless of the evidence, may result in a "miscarriage of justice" because they operate to deny a criminal defendant the constitutionally required "orderly legal procedure" . . . all involve fundamental "structural defects" in the judicial proceedings, analogous to those to which the United States Supreme Court referred in its [*Arizona v. Fulminante* (1991) 499 U.S. 279] decision . . . .' (*Cahill*, at pp. 501-502.)" (*People v. Lightsey* (2012) 54 Cal.4th 668, 699, fn. omitted.)

8

"Error that occurs during the presentation of the case to the jury is generally trial error; an error that erroneously adds to or subtracts from the record before the jury can 'be quantitatively assessed in the context of the other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt.' (*Arizona v. Fulminante* (1991) 499 U.S. 279, 308; see also *People v. Allen* (2008) 44 Cal.4th 843, 870–871.)  A court in such circumstances can meaningfully ask 'whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error.' (*Sullivan v. Louisiana* (1993) 508 U.S. 275, 279.)  In contrast, structural errors not susceptible to harmless error analysis are those that go to the very construction of the trial mechanism — a biased judge, total absence of counsel, the failure of a jury to reach any verdict on an essential element." (*People v. Gamache* (2010) 48 Cal.4th 347, 396 (*Gamache*); see *People v. Aranda* (2012) 55 Cal.4th 342, 363-366 [addressing federal constitutional structural error].)  The *Fulminante* court described some of these errors as affecting the "entire conduct of the trial from beginning to end . . . ." (*Fulminante,* at p. 309.)

In short, trial errors can be fairly examined in the context of the entire record and are amenable to harmless error review.  Structural errors, on the other hand, go to the very reliability of a criminal trial as a vehicle for determining guilt or innocence and are reversible per se.  (See *Gamache*, *supra*, 48 Cal.4th at p. 396; *In re James F.* (2008) 42 Cal.4th 901, 914 (*James F.*).)  A structural error requires per se reversal because it cannot be fairly determined how a trial would have been resolved if the grave error had not occurred.  For example, it would be impossible to divine how a trial would have proceeded if a defendant had been allowed counsel or the trial judge not been biased.  There is a strong presumption that any error falls within the trial error category, and it will be the rare case where a constitutional violation will not be subject to harmless error analysis.  (*People v. Marshall* (1996) 13 Cal.4th 799, 851 (*Marshall*).)

9

To our knowledge, the United States Supreme Court has never suggested that the lack of an oral acknowledgement of the verdict in open court is a structural defect. As noted, reversal for structural error has been limited to instances such as adjudication by a biased judge (*Tumey v. Ohio* (1927) 273 U.S. 510), the complete deprivation of counsel (*Gideon v. Wainwright* (1963) 372 U.S. 335), the unlawful exclusion of grand jurors based on race (*Vasquez v. Hillery* (1986) 474 U.S. 254), the infringement on the right to self-representation (*McKaskle v. Wiggins* (1984) 465 U.S. 168), the denial of a public trial (*Waller v. Georgia* (1984) 467 U.S. 39), and the giving of a constitutionally deficient instruction on the reasonable doubt standard (*Sullivan v. Louisiana*, *supra,* 508 U.S. 275). (See *Washington v. Recuenco* (2006) 548 U.S. 212, 218, fn. 2 [listing structural errors]; *United States v. Gonzalez-Lopez* (2006) 548 U.S. 140, 148-149 [same]; *Neder v. United States* (1999) 527 U.S. 1, 8 [same].) Such errors clearly affect the "the framework within which the trial proceeds . . . ." (*Arizona v. Fulminante*, *supra*, 499 U.S. at p. 310.) Consistent with the limited nature of structural error, we have held that in the absence of a request, there is no denial of a constitutional right when the court fails to poll the jury. (*Lessard*, *supra*, 58 Cal.2d at p. 452.)

Certainly, the safeguard of a unanimous jury verdict is a core constitutional right. (U.S. Const., 6th Amend.; Cal. Const., art. I, § 16; see *People v. Russo* (2001) 25 Cal.4th 1124, 1132.) Here, there is no indication that the jury was not unanimous. It was clearly instructed on the requirement of unanimity and it deliberated for just over three hours before it notified the bailiff that it had reached a verdict. The court stated in the jury's presence that it understood the jury had reached a verdict. The foreperson returned signed verdict forms. The jury convicted on some counts, but also acquitted on one. No juror objected when the

10

verdicts were read.[7]  Neither party requested polling.  Indeed, the Court of Appeal acknowledged the complete absence from the record of any apparent jury disagreement and the presence of ample, if not overwhelming, evidence of guilt.

Of course, trial judges are charged with knowing what the statutes require and with following their dictates.  However, as our state Constitution makes clear, a judgment cannot be reversed for state law error unless there has been a miscarriage of justice.  (Cal. Const., art. VI, § 13; *People v. Watson*, *supra*, 46 Cal.2d at p. 836.)  In the absence of structural error, the *Watson* standard for demonstrating prejudice controls.  Sections 1149, 1163, and 1164 are procedural provisions designed to protect the right to a unanimous verdict.  (See *Thornton*, *supra*, 155 Cal.App.3d at p. 859.)  Many statutes, however, set out procedures designed to protect constitutional principles.  Broadly construed, many of these procedural statutes may be said to protect due process and other constitutional safeguards.  Nevertheless, most procedural shortcomings constitute trial error.  Indeed, most *constitutional violations themselves* are subject to harmless error review, particularly if, as here, a defendant had counsel and was tried by an impartial adjudicator.[8]  (*People v. Mil* (2012) 53 Cal.4th 400, 410 (*Mil*).)  As we

---

**7**      In *People v. Thornton* (1984) 155 Cal.App.3d 845, 852 (*Thornton*), the court observed that it may be unreasonable to expect that an average juror will understand that he or she could object in such circumstances.  While that may be so, and thus it should not be *required* that an objection be made in order to find a lack of unanimity, the absence of any juror objection is a legitimate factor, among others, that can be considered in determining whether there is any real question as to unanimity.

**8**      For example, in *Arizona v. Fulminante*, *supra*, 499 U.S. at pages 306-307, the high court set out numerous instances of constitutional error properly reviewed for harmless error.  They included: (1) overbroad jury instructions at the sentencing stage in a capital case (*Clemons v. Mississippi* (1990) 494 U.S. 738, 752–754); (2) jury instruction containing an erroneous conclusive presumption (*Carella v. California* (1989) 491 U.S. 263, 266-267); (3) the erroneous admission

*(footnote continued on next page)*

have previously noted, a defendant is entitled to a fair trial, not a perfect one.  (See *People v. McDowell* (2012) 54 Cal.4th 395, 442.)  Despite the trial court's error here, nothing in the record indicates that defendant's trial was in any way unfair.

In addition, any number of cases of venerable vintage have subjected technical violations of the statutory requirements for receiving jury verdicts to harmless error analysis.  (See, e.g., *People v. Rodundo* (1872) 44 Cal. 538, 541 [failure to call names of jurors before receiving verdict forms when all jurors were present]; *People v. Gilbert* (1880) 57 Cal. 96, 97-98 [failure to record verdict before discharge of jury]; *People v. Smith* (1881) 59 Cal. 601, 603-604 [same]; *People v. Smalling* (1892) 94 Cal. 112, 118-119 [verdict recorded, but not

---

*(footnote continued from previous page)*

of evidence in violation of the Sixth Amendment counsel clause during the sentencing stage in a capital case (*Satterwhite v. Texas* (1988) 486 U.S. 249, 257-258); (4) jury instruction misstating an element of the offense (*Pope v. Illinois* (1987) 481 U.S. 497, 501-504); (5) jury instruction on an erroneous rebuttable presumption (*Rose v. Clark* (1986) 478 U.S. 570, 579-580); (6) the erroneous exclusion of the defendant's testimony regarding his confession (*Crane v. Kentucky* (1986) 476 U.S. 683, 691); (7) restricting a defendant's right to cross-examine a witness for bias (*Delaware v. Van Arsdall* (1986) 475 U.S. 673, 681); (8) denying a defendant's right to be present at trial (*Rushen v. Spain* (1983) 464 U.S. 114, 117-118, and fn. 2); (9) improper comment on the defendant's silence at trial (*United States v. Hasting* (1983) 461 U.S. 499, 509); (10) failure to instruct on a lesser included offense in a capital case (*Hopper v. Evans* (1982) 456 U.S. 605, 613-614); (11) failure to instruct on the defendant's presumption of innocence (*Kentucky v. Whorton* (1979) 441 U.S. 786, 788); (12) admitting improper identification evidence in violation of the Sixth Amendment (*Moore v. Illinois* (1977) 434 U.S. 220, 232); (13) admitting the out-of-court statement of a nontestifying codefendant (*Brown v. United States* (1973) 411 U.S. 223, 231–232); (14) admitting a postindictment, pretrial confession obtained by a police officer posing as a fellow prisoner (*Milton v. Wainwright* (1972) 407 U.S. 371, 372); (15) admitting evidence obtained in violation of the Fourth Amendment (*Chambers v. Maroney* (1970) 399 U.S. 42, 52–53); (16) denial of counsel at a preliminary hearing (*Coleman v. Alabama* (1970) 399 U.S. 1, 10–11).

12

transcribed into bound minutes and order book before the jury was discharged].) Thus, there is clear precedent for considering some failures to follow statutory procedure as ordinary trial error.

Our decision in *People v. Nichols* (1881) 62 Cal. 518 (*Nichols*) is particularly instructive. There, the jury indicated it had reached a verdict and returned to the courtroom. The court asked the jury if it had reached a verdict. The foreperson indicated that it had done so, and handed the verdict to the judge. The judge handed the clerk the verdict form and directed the clerk to record the verdict. The defendant asked that the verdict be read before it was recorded, but the court refused. After the clerk copied the verdict into the court's minutes, he read it to the jurors and asked them if this was their verdict. Some answered yes, while others did not voice any dissent. The jury was then polled and each member affirmed the verdict. The jury was discharged. (*Id*. at p. 519.) On appeal, the defendant claimed the trial court erred by denying his request that the verdict be read before being recorded or declared as required by the procedures set forth in the Penal Code. (*Nichols,* at p. 520.)

We held that the trial court committed a "palpable irregularity" by recording the verdict before it was read. (*Nichols*, *supra*, 62 Cal. at p. 520.) However, we concluded that the error did not prejudice the defendant in any substantial way. (*Ibid.*) Here, the trial court's procedural error is similar to the "palpable irregularity" in *Nichols*. The technical error here did not affect the essential framework within which defendant's trial was conducted. (See *Marshall*, *supra*, 13 Cal.4th at p. 851.)

The jury was instructed that unanimity was required. In the absence of some indication to the contrary, it is presumed the jury followed the instructions. (See *People v. Harris* (1994) 9 Cal.4th 407, 426.) Defendant makes no claim that the jury ignored the court's instructions, nor did the court give any instruction that

13

undermined the unanimity mandate.  To call what transpired here structural error would be to expand that notion beyond any example articulated by the United States Supreme Court, and elevate form over substance.

A number of cases have considered the significance of a juror affirmation when a court attempts to reconvene a jury (*Thornton*, *supra*, 155 Cal.App.3d at p. 856; *People v. Hendricks* (1987) 43 Cal.3d 584, 597), or to substitute a juror (*People v. Green* (1995) 31 Cal.App.4th 1001, 1009; *People v. Lankford* (1976) 55 Cal.App.3d 203, 211).  Cases also have examined juror affirmation when a juror equivocates (*Chipman v. Superior Court* (1982) 131 Cal.App.3d 263, 266; *People v. Superior Court* (1967) 67 Cal.2d 929, 932-933), when a jury returns inconsistent verdicts (*People v. Mestas* (1967) 253 Cal.App.2d 780, 786), when the court erroneously declares a mistrial (*Stalcup v. Superior Court* (1972) 24 Cal.App.3d 932, 936), and when the verdict forms on guilt and sanity are not signed by the same foreperson (*People v. Wiley, supra,* 111 Cal.App. at p. 624).

No case, however, has squarely considered whether a failure to comply with section 1149, standing alone, must always render a verdict defective.  We hold that, under the circumstances of this case, where the verdict was read and recorded in the presence of all 12 jurors, the verdict was not rendered invalid.**9**

In defending its conclusion of structural error the Court of Appeal leaned heavily on *Thornton*, *supra*, 155 Cal.App.3d 845.  It reads *Thornton* too broadly and thus its reliance on it is misplaced.  Thornton was charged with possession of a drug for sale.  The jury acquitted him of that charge but apparently agreed to convict him of simple possession, as a lesser included offense.  When the jury was

---

**9**     In addition, we note the following.  The guilty verdicts that were signed by the foreperson all read, "We, the Jury, in the above entitled cause *find* the defendant . . . [guilty of] . . . ."  (Italics added.)

14

brought to the courtroom, the clerk read the not guilty verdict form returned on the charged offense.  The jury collectively affirmed that verdict.  (*Id*. at pp. 848-851.)  The court asked both advocates whether there was " '[a]ny matter to come before the court before the jury is discharged.' " (*Id*. at p. 849.)  Both counsel replied in the negative and the jury was discharged.  (*Ibid*.)  Later in the day, the clerk noted that a second verdict form, delivered by the jury but evidently overlooked by the court and the clerk, indicated a guilty finding on the lesser offense.  (*Id*. at pp. 850-851.)

The court notified counsel and, over defense objection, "reassemble[d]" the jury the next day.  (*Thornton*, *supra*, 155 Cal.App.3d at p. 850.)  At that time the court explained the inadvertent failure to read the second verdict form.  The court ordered both verdicts recorded, and both the guilty and not guilty verdicts were read as recorded.  The jury collectively acknowledged both verdicts.  The jury was polled as to both verdicts and each juror, individually, affirmed both verdicts.  (*Id*. at pp. 850-851.)  The *Thornton* court framed the issue as "whether the court erred in reconvening the jury the day after it was discharged, and if so, whether the signed and dated verdict form as to the lesser included offense can be accorded any legal effect."  (*Id*. at p. 851.)

The *Thornton* court held that the trial court erred by reconvening the discharged jury, and as a result, the only true verdict was the one the jury rendered before its discharge.  (*Thornton*, *supra*, 155 Cal.App.3d at p. 858.)  As the facts make plain, the failure in *Thornton* has nothing to do with a failure to affirm.  Instead, the failure was that, after the first verdict was read, the court discharged the jury.  (*Ibid*.)  No other verdict was mentioned, read, recorded, or affirmed.  "The conclusion is inescapable that a discharge accompanied by loss of control of the jury *divests the court of jurisdiction to reconvene them* whether or not a

15

complete verdict was rendered and whether or not any error occurred at all." (*Id.* at p. 856, italics added.)

Here, the Court of Appeal quoted from *Thornton* as to the inability of the court to evaluate the impact of the error. The quoted language focused on the inability to determine whether any jury taint may have taken place after the jury was discharged, but before it was "reassemble[d]." Unlike *Thornton*, our case involves no loss of jurisdiction, improper recalling of the jury, or any possibility of juror taint.

The Court of Appeal's reliance on *People v. Traugott* (2010) 184 Cal.App.4th 492 (*Traugott*) was similarly misplaced. Traugott was tried by a 12-person jury, which returned verdict forms indicating findings that she possessed methamphetamine for sale and had suffered a prior conviction. The jury reported about 3:30 p.m. that it had reached a verdict. (*Id.* at p. 496.) The defendant mistakenly left the court environs during deliberations. (*Id.* at pp. 497-498.) The court began the process of bringing all necessary participants together to receive the verdict. Ultimately the defense agreed the verdict could be taken in the defendant's absence. (*Id.* at pp. 497-498.)

The court convened with " 'stand-in' " counsel for both the prosecution and the defense. (*Traugott*, *supra*, 184 Cal.App.4th at p. 498.) By that time, Juror No. 4 had left to go to a job interview.[10] (*Ibid.*) The court indicated it would take the verdicts in the absence of Juror No. 4 unless there was an objection. Substitute defense counsel initially declined to agree to this procedure, saying she was not authorized to do so. (*Ibid.*) The court responded that she was standing in as attorney of record, had " 'all authorization and all power to do it,' " and, " 'If not,

---

**10** The opinion does not explain whether the juror was formally released and, if so, by whom.

16

you shouldn't be here.' " (*Ibid*.)  Told, " 'You have to make a decision, Counsel,' " defense counsel replied, without conferring with her absent client, " 'We can proceed, Your Honor.  No objection.' " (*Id*. at p. 499.)

The remaining 11 jurors returned to the courtroom, the clerk read the verdict, and the foreperson acknowledged it as correct.  (*Traugott, supra*, 184 Cal.App.4th at p. 499.)  Defendant's counsel asked the court to poll the jury.  The court responded:  " 'I can't poll [Juror] No. 4.' " (*Ibid*.)  Defense counsel replied, " 'Yes, I understand.' "  The remaining jurors were polled and affirmed the verdict.  (*Ibid*.)

The Court of Appeal reversed.  It noted that while a defendant's state constitutional right to a unanimous 12-person jury is fundamental, a defendant can waive it.  (*Traugott*, *supra*, 184 Cal.App.4th at pp. 500-501.)  The problem was that the defendant did not expressly waive this right and counsel's consent was insufficient.  (*Id*. at p. 502.)  As a result, the court held that the defendant's conviction could not stand because she did not receive a unanimous verdict of 12 jurors.  (*Ibid*.)  The court stated that "the right to an oral affirmation of the verdicts by the jurors is not a mere procedural formality," because jurors "may equivocate or change their vote when called upon in open court." (*Id*. at p. 501.)  If an equivocating juror is not present in open court to be polled, the court and counsel cannot be confident that the verdict is unanimous.  (*Id*. at pp. 501-502.)

*Traugott* is readily distinguishable from our case.  Here, all 12 jurors were present when the verdict was read and none expressed dissent when the verdict was read in open court.  Neither party objected to the court's actions in receiving the verdict nor requested a poll of the jury.

The court's failure to follow section 1149's requirement did not deprive defendant of her constitutional right to a unanimous jury verdict.  The error did not render the trial fundamentally unfair and its effect may be assessed in the context

17

of the entire proceedings. (See *Gamache*, *supra*, 48 Cal.4th 347, 396; *James F.*, *supra*, 42 Cal.4th at p. 914.) As we recently observed, "Plainly, not every violation of the state and federal right to a jury trial is a structural defect requiring reversal without regard to whether the defendant suffered actual prejudice." (*Mil*, *supra*, 53 Cal.4th at p. 411.) Accordingly, we conclude that here noncompliance with section 1149 is procedural error, subject to harmless error review. (*People v. Watson*, *supra*, 46 Cal.2d at p. 836.)[11] For the reasons set out above, the error was plainly harmless.

## III. DISPOSITION

We reverse the Court of Appeal's judgment, and affirm the judgment of the trial court.

**CORRIGAN, J.**

**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**KENNARD, J.**
**BAXTER, J.**
**WERDEGAR, J.**
**CHIN, J.**
**LIU, J.**

---

[11]    Because we hold that reversal was unwarranted, we need not address defendant's claim that double jeopardy bars a retrial.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. Anzalone
_____

**Unpublished Opinion** XXX NP opn. filed 3/17/11 – 6th Dist.
**Original Appeal**
**Original Proceeding**
**Review Granted**
**Rehearing Granted**
_____

**Opinion No.** S192536
**Date Filed:** April 15, 2013
_____

**Court:** Superior
**County:** Santa Clara
**Judge:** Ron M. Del Pozzo
_____

**Counsel:**

J. Courtney Shevelson, under appointment by the Supreme Court, and Gabriel Bassan, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., and Kamala D. Harris, Attorneys General, Dane R. Gillette, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Stan Helfman, Laurence K. Sullivan, Sharon G. Birenbaum and Michael Chamberlain, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

J. Courtney Shevelson
PMB 187
316 Mid Valley Center
Carmel, CA  93923-8516
(831) 625-6581

Michael Chamberlain
Deputy Attorney General
455 Golden gate Avenue, Suite 11000
San Francisco, CA  94102-7004
(415) 703-5870