Filed 6/17/14  P. v. Blattel CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>WILLIAM DOUGLAS BLATTEL,<br><br>    Defendant and Appellant. | C073264<br><br>(Super. Ct. No. 12F01684) |

A jury found defendant William Douglas Blattel, a felon, guilty of unlawful possession of a firearm and defendant admitted having served five prior prison terms. The court sentenced defendant to seven years in state prison, consisting of three years for the unlawful firearm possession, one year each for four of the priors, and an additional year for the fifth prior but the punishment stayed.

On appeal, defendant contends he received ineffective assistance of counsel when his counsel failed to object to testimony by a police officer that defendant was guilty of possession of the firearm because of the close proximity of the firearm to defendant when

1

it was found during the search of his bedroom.  Defendant also contends the trial court should have stricken rather than stayed the punishment for the fifth prior.  We reject defendant's first contention, but, like the People, agree with him as to his second claim.

STATEMENT OF THE FACTS

On March 6, 2012, defendant, who was on parole, was living in his father's home and sharing a bedroom with his girlfriend, Kristy McCullough, when officers from the Sacramento County Sheriff's Department entered the bedroom to conduct a parole search.  Both defendant and McCullough were present when the officers entered the bedroom.  The room was messy and cluttered with furniture.  Near the bed was a broken chair that was being used as an end table.  The chair was partially covered with a blanket, and on the floor beneath the chair one of the officers found a loaded .357-caliber firearm in a nylon holster.  The gun was a couple of feet from where defendant was standing.  Defendant's driver's license was on a dartboard directly behind where the firearm was found.  No additional ammunition was located in the bedroom nor were there any usable fingerprints found on the gun.

At the time of the search, McCullough denied knowing anything about the firearm, but later told defense counsel and counsel's investigator that the gun belonged to her.  McCullough initially did not admit ownership of the gun because she had legal troubles in the past regarding a drug problem.  McCullough claimed that a couple of weeks before the search she had bought the gun from an old friend as a gift for her father who lived in Oregon.  McCullough initially kept the gun at another friend's home because defendant had told her not to bring firearms into the house due to his being on parole.  Nevertheless, a few days before the search, McCullough retrieved the gun from her friend and hid it under the chair, intending to give it to her brother whom she expected to come by on his way back to Oregon.

2

For the purpose of impeaching McCullough regarding her testimony that the gun belonged to her, the prosecution played for the jury excerpts from a recorded conversation between McCullough and defendant while the latter was in jail. In one excerpt, defendant lamented that if he had one more second of notice before the police entered, "it wouldn't have been in there no more." McCullough denied recalling this conversation, but claimed that "it" might have referred to one of the five cell phones or the iPod Touch that the officers had seized during the search.

In another excerpt, McCullough informed defendant she had told his attorney that she was the one to whom the gun belonged and that defendant did not know anything about it. Defendant, who had spoken with his attorney earlier, tried to assure McCullough that she would get probation because the gun was not stolen, but was just not registered in her name.

Terry Taylor, McCullough's son, testified that several days prior to defendant's arrest, his mother had told him that she had purchased a gun.

DISCUSSION

I

*Ineffective Assistance Of Counsel*

During the prosecutor's questioning of Detective David Gutierrez, one of the officers who participated in the search, the prosecutor asked Gutierrez if there was a reason why, during the search, he did not ask McCullough whether she could lawfully have a gun. Gutierrez responded, "It wouldn't matter, because where we found the firearm, it was still within [ defendant's] possession, and it would be illegal to be in the room." Defendant's counsel did not object to Gutierrez's response.

Defendant contends that his counsel's failure to object to Gutierrez's "offering of [his] legal opinion as to [defendant]'s guilt" constituted ineffective assistance of counsel.

3

The People respond that there was a legitimate tactical reason for counsel's not objecting -- specifically that objecting "after [Gutierrez] volunteered his opinion would have highlighted it." The People also claim that defendant cannot establish prejudice from counsel's failure to object, i.e., that there is no reasonable probability the outcome would be more favorable had his counsel objected and had the testimony been stricken.

"[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." (*Strickland v. Washington* (1984) 466 U.S. 668, 697 [80 L.Ed.2d 674, 699]; in accord, *In re Alvernaz* (1992) 2 Cal.4th 924, 945.)

We follow the foregoing directive by United States and California Supreme Courts in resolving defendant's ineffectiveness claim. The gun was discovered within a few feet of where defendant was standing when the officers made their surprise entry into the bedroom; his driver's license was on a dartboard directly behind the gun's location; and defendant's statement regarding being able to hide "it" from the police if only he had a bit more time is most reasonably understood as referring to the gun, rather than the cell phones and/or iPod Touch since only the gun was shown to be contraband.

And of no little importance were the court's instructions to the jury as to how the charge was to be proven: "You must follow the law as I explain it to you, even if you disagree with it." And to prove the defendant guilty of the charge, "the People must prove that: [¶] 1. The defendant possessed a firearm; [¶] 2. The defendant *knew* that he possessed the firearm; [¶] AND [¶] 3. The defendant had previously been convicted of a felony." (Italics added.) The court further instructed the jury regarding the meaning of

4

possession: "Two or more people may possess something at the same time" and that "A person does not have to actually hold or touch something to possess it. It is enough if the person has control over it or the right to control it, either personally or through another person."

In the absence of some indication to the contrary, and there is no such indication in this record, we presume the jury followed the court's instructions as to the law (*People v. Anzalone* (2013) 56 Cal.4th 545, 557), rather than the opinion espoused by Detective Gutierrez in his testimony.

II

*Stay Of The Prior Prison Term Enhancement*

Defendant admitted the five charged allegations of service of a prior prison term which provides an enhancement of one year for each prior conviction for which the defendant has served a separate prior prison term. (§ 667.5, subds. (b), (c).) At sentencing it was discovered that alleged priors four and five were served at the same time, so the court stayed the one-year term imposed for the fifth prior.

Defendant contends, and the People agree, that the court should have stricken rather than stayed, the one-year term imposed for the fifth prior. We too agree. Where a prior prison term is found true, but may not be imposed because it was not served separately, it must be stricken rather than stayed. (*People v. Langston* (2004) 33 Cal.4th 1237, 1241-1246 [Once the prior prison term is found true within the meaning of Pen. Code, § 667.5, subd. (b), the trial court must either impose or strike the one-year enhancement, but may not stay it].)

DISPOSITION

The stayed one-year enhancement for the fifth prior prison term is stricken. The trial court is directed to prepare an amended abstract of judgment reflecting this change

5

and forward a copy to the Department of Corrections and Rehabilitation.  In all other respects the judgment is affirmed.


      ROBIE      , J.


We concur:


      HULL      , Acting P. J.


      BUTZ      , J.