Filed 10/28/20  P. v. Aguirre CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>GARY HURTADO AGUIRRE,<br><br>    Defendant and Appellant. | D075762<br><br><br>(Super. Ct. Nos. SCS304686, SCD279291 ) |

APPEAL from a judgment of the Superior Court of San Diego County, Garry G. Haehnle and Joan P. Weber, Judges.  Reversed in part, affirmed in part.

Patrick Dudley, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Arlene A. Sevidal and James M. Toohey, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Gary Hurtado Aguirre of robbery (Pen. Code,[1] § 211) in case No. SCD279291.

In case No. SCS304686, a jury convicted Aguirre of simple assault (§ 240), battery causing serious bodily injury (§ 243, subd. (d)), and possession of drug paraphernalia (Health & Saf. Code, § 11364). Regarding the battery conviction, the jury apparently found true that Aguirre had personally inflicted great bodily injury on the victim (§ 1192.7, subd. (c)(8)). However, the jury's true finding was not read in open court, the jury was not asked to confirm the verdict, and Aguirre was not given the opportunity to poll the jurors as to this true finding. In a subsequent hearing, after the jury was discharged, the court ruled that the failure to read the verdict as to the special allegation was harmless error and allowed the true finding to be part of Aguirre's record of conviction.

During a consolidated sentencing proceeding, the trial court sentenced Aguirre to prison for three years, consisting of two years for the robbery conviction and a consecutive one year term for the conviction of battery with serious bodily injury.

Aguirre filed an appeal in both cases, but focuses only on case No. SCS304686. He asserts that the trial court committed structural error when: (1) the jury's verdict as to the special allegation was not read in open court, (2) the court did not ask the jury if that made the subject true finding, and (3) Aguirre was not permitted to poll the jury as to this true finding. We agree, and thus, reverse the judgment as to the true finding.

---

[1] Statutory references are to the Penal Code unless otherwise specified.

While the victim and his family were in the laundromat, Aguirre was walking around the victim's car in the parking lot. Because the car windows were open and a cell phone was inside, the victim went outside to put the windows up and lock the doors. After returning to the laundromat, the victim, feeling bad for Aguirre, went outside and gave him four dollars. Aguirre briefly took the money but later returned it. Aguirre instead told the victim to give him his cell phone. When the victim did not comply, Aguirre punched the victim in the face. The victim fell to his knees as a result of the blow. While on his knees, Aguirre punched the victim in the head.

As a result of the attack, the victim bled profusely from the face, and he was taken by ambulance to the hospital. He suffered an open nasal fracture and a maxillary fracture and required 12 stitches in his face.

Aguirre was arrested around the corner from the laundromat with blood on his hands, blood on his jeans, and a methamphetamine pipe in his pocket.

## DISCUSSION

### I

### THE FAILURE TO READ THE JURY'S VERDICT AS TO THE SPECIAL ALLEGATION IN OPEN COURT IN THE PRESENCE OF THE JURY

#### A. Aguirre's Contention

Aguirre argues that, although the jury returned a written verdict indicating that it found true that he had personally inflicted great bodily injury on the victim in violation of section 1192.7, subdivision (c)(8), the jury did not orally declare and thereby endorse the verdict on the special

---

[2] Because Aguirre does not challenge a conviction for robbery in case No. SCD279291, we do not set forth the facts of that offense.

allegation. Aguirre contends this violated his right to trial by jury and requires reversal of the judgment as to the true finding.

## B. Background

The trial court brought the jury and parties into the courtroom for the jury to deliver its verdicts. The trial court addressed the foreperson, "Sir, I understand that the jury has reached verdicts." The foreperson answered in the affirmative and handed the verdict forms to the trial court. The trial court then handed the verdict forms back to the foreperson because the jury had apparently left the verdict form for count one blank. After correcting the error, the foreperson handed the forms back to the trial court, and the clerk read the jury's verdicts.

As to count one, the charge of assault by means likely to produce great bodily injury, the jury found Aguirre not guilty. The trial court then instructed the clerk that he did not need to "read the allegations." The clerk thus continued reading the verdicts. As to the lesser included offense of count one, the jury found Aguirre guilty of assault in violation of section 240. As to count two, the clerk stated that the jury found the defendant "guilty of the crime of battery with serious bodily injury in violation of Penal Code Section 243, Subsection (d) . . . ." The clerk did not read the true finding for the "personal infliction of great bodily injury" allegation charged under count two. The clerk then read the guilty finding under count three for possession of drug paraphernalia under Health and Safety Code section 11364.

After the clerk read the verdicts, the trial court inquired, "Ladies and gentlemen, in unison, were these and are these your verdicts?" The jury responded with "[a] chorus of yeses." The trial court asked if either side wished to have the jury polled. Both parties declined. The court instructed the clerk to "record the verdicts," and both parties waived the reading of the

4

verdicts as recorded. The trial court instructed the jury that it had completed its duties and discharged it.

The trial court subsequently reconvened the parties and, after noting that "[t]he jury ha[d] been discharged," informed the parties that it had "made a grave mistake in this case. I didn't realize it until after I discharged the jury. It is not a grave mistake, but I told . . . our clerk, that—when he was reading Count 1—that he didn't need to read the 'not true' on the allegations because it was not guilty. [¶] Well, we got to count 2, and he didn't read the 'true' finding on the 1192.7(c)(8) allegation, which is on the verdict form, and they did make a—make a 'true' finding. And that was my mistake because I didn't realize it until after the jury was out the door. And I am like, did I not hear you read that? Did I miss that somehow? [¶] But they did make a 'true' finding."

The trial court stated that it could not "bring the jury back because they have been discharged." The court noted that the " true finding . . . doesn't add time," but that the offense under section 243, subdivision (d) is not a "serious felony" without the allegation. The trial court left the matter for the parties to brief and resolve at the sentencing hearing.

The parties reconvened in a later session to address the clerk's failure to read the true finding for the personal infliction of great bodily injury allegation. After indicating that it read the papers submitted by the parties, the case of *People v. Anzalone* (2013) 56 Cal.4th 545 (*Anzalone*), and the relevant Penal Code sections (sections 1149 and 1164), the trial court asked defense counsel to address the harm suffered by Aguirre. In response, defense counsel stated, "when the verdict was read and the jury was polled as to whether or not that was their verdict, the question that was posed to them was that their verdict as to Count 2 was guilty and silence as to the

5

allegation. They affirmed that their verdict was guilty as to Count 2. And as far as everybody in the court had heard, silence as to the allegation." The trial court and defense counsel discussed the prejudicial effect of the failure to read the true finding on the allegation. Defense counsel reiterated that the true finding was not read in open court. When asked by the trial court if he had objected, defense counsel responded that he would not have objected because it was an "implicit acquittal."

Defense counsel stated that the harm to Aguirre was that the jurors were never asked to affirm the true finding "that was written on a piece of paper." He stated that "[t]he verdict as it was read was guilty and silence. And guilty and silence is an implicit acquittal."

The prosecutor argued that the jury's "intent" to make the finding as to the special allegation was clear. The prosecutor emphasized that the jury wrote "true" on the verdict form. The prosecutor stated that there was "nothing to suggest here that their decision was anything but unanimous." The prosecutor further noted that defense counsel failed to object that the verdicts were not read in compliance with section 1149 and "waived polling." The prosecutor argued that an oral affirmation of the jury's verdict was unnecessary because the jury clearly exhibited its intent with the written verdict on the special allegation.

The trial court determined that there was no structural or constitutional error, and Aguirre suffered no harm in any event. The trial court reasoned that the "acquittal on Count 1 show[ed] that [Aguirre's] rights were protected. . . . He was able to get his rights to a fair trial, and they were preserved." In addition, the trial court observed that "there was no indication among the jurors that the allegation wasn't found by—unanimously found as true by them. And I think it was just a lapse that people assumed that thing

6

got read and—the allegation and true finding got read." Accordingly, the trial court concluded it was going to "keep the true finding as to the Count 2 allegation in place."

C. Relevant Authority

Section 1149 provides: "When the jury appear they must be asked by the court, or clerk, whether they have agreed upon their verdict, and if the foreman answers in the affirmative, they must, on being required, declare the same."

Section 1163 provides: "When a verdict is rendered, and before it is recorded, the jury may be polled, at the request of either party, in which case they must be severally asked whether it is their verdict, and if any one answer in the negative, the jury must be sent out for further deliberation."

Section 1164, subdivision (a), provides in relevant part: "When the verdict given is receivable by the court, the clerk shall record it in full upon the minutes, and if requested by any party shall read it to the jury, and inquire of them whether it is their verdict. If any juror disagrees, the fact shall be entered upon the minutes and the jury again sent out; but if no disagreement is expressed, the verdict is complete, and the jury shall . . . be discharged from the case."

A verdict is rendered when it has been received and read by the clerk, acknowledged by the jury, and recorded. (*People v. Hendricks* (1987) 43 Cal.3d 584, 597; *People v. Bento* (1998) 65 Cal.App.4th 179, 188.) Jury acknowledgement of the verdict in open court is essential to the validity of the verdict. (*People v. Thornton* (1984) 155 Cal.App.3d 845, 858 (*Thornton*).) If the jury merely returns a written verdict, but fails to unanimously endorse the verdict in open court, the verdict cannot normally be sustained based

7

solely on the written form.  (*Ibid*.; see *People v. Green* (1995) 31 Cal.App.4th 1001, 1009 (*Green*); *People v. Mestas* (1967) 253 Cal.App.2d 780, 786.)

Acknowledgement of the verdict in open court may be performed by the foreperson on behalf of the entire jury.  (§§ 1149, 1163, 1164, subd. (a); *People v. Wiley* (1931) 111 Cal.App. 622, 625; *Stalcup v. Superior Court* (1972) 24 Cal.App.3d 932, 936.)  Additionally, upon request of either party, the jurors may be required to individually acknowledge the verdict through the process of individual polling.  (§§ 1149, 1163, 1164.)

The acknowledgment requirement and the defendant's right to request individual polling are founded on the constitutional right to a unanimous jury verdict.  (*Thornton*, *supra*, 155 Cal.App.3d at pp. 858-859.)  During the acknowledgment and polling, any juror is entitled to dissent from the verdict. (*Id*. at p. 859.)  The process is designed to reveal mistakes in the signing of a particular form or "that one or more jurors acceded to a verdict in the jury room but was unwilling to stand by it in open court."  (*Ibid*.)

### D.  Analysis

In *Thornton*, the court found prejudicial error when a written verdict form was never acknowledged in open court before discharge of the jury, thereby depriving the defendant of his right to test the verdict in open court at the time of its receipt.  (*Thornton*, *supra*, 155 Cal.App.3d at pp. 856-860.) The jury had returned verdicts acquitting the defendant of the charged offenses, but it had also submitted a verdict form finding defendant guilty of a lesser included offense.  (*Id*. at p. 848.)  The trial court did not notice this verdict form until after the jury had been discharged.  (*Id*. at pp. 848-850.) The appellate court held that the verdict form convicting defendant of the lesser included offense could not be given legal effect.  The court determined that "the only true verdict was the one finding [defendant] not guilty of the

8

charged offense, since that was the only verdict unanimously endorsed by the jurors in open court." (*Id*. at p. 858.)

Here, as in *Thornton*, the trial court discharged the jury without receiving the verdict on the bodily injury allegation. This case does not involve the mere failure to poll the jurors, but rather the complete failure to present the verdict and to have it formally acknowledged in open court.

When the jurors are present in the courtroom but not individually polled, the jurors still hear the verdict and have the opportunity to raise an objection. When the presentation is entirely eliminated, however, the jurors have no opportunity to "declare, up to the last moment, that he [or she] dissents from the verdict." (*Chipman v. Superior Court* (1982) 131 Cal.App.3d 263, 266.) The declaration of the verdict in open court is essential to ensure a unanimous jury verdict, a fundamental right guaranteed by the California Constitution. (*People v. Collins* (1976) 17 Cal.3d 687, 693.) Under these circumstances, Aguirre may properly raise the issue on appeal even though no objection was made below. Therefore, we reject the Attorney General's argument that Aguirre forfeited this issue by failing to object in the trial court.

Additionally, we disagree with the Attorney General that *Thornton* is not applicable here, but instead, we should follow *Anzalone*, *supra*, 56 Cal.4th 545. The Attorney General's reliance on *Anzalone* is misplaced.

In *Anzalone*, the issue before our high court was whether the trial court's failure to comply with section 1149 constituted structural error, and thus reversible per se, or trial error subject to harmless error review. (*Anzalone*, *supra*, 56 Cal.4th at p. 548.) There, the trial court received the verdicts and read all the verdicts with the entire jury present, but then forgot to ask the jurors if the verdicts it read were their verdicts. (*Id*. at pp. 549-

9

550.) The court held that failure to comply with section 1149 did not constitute structural error, but instead, was subject to harmless error analysis under *People v. Watson* (1956) 46 Cal.2d 818. (*Anzalone,* at pp. 555, 557.) Concerning the polling of jurors, our high court determined that a party must object to an incomplete polling to preserve the issues for appeal. (*Id*. at p. 550.)

The issues before us in the instant matter are not as limited as those in *Anzalone*. Here, the trial court did not read the jury's true finding on the personal affliction of great bodily injury allegation and discharged the jury before it realized its mistake. As such, the error here is more like the error in *Thornton* than *Anzalone*. Further, although our Supreme Court distinguished *Thornton*, it did not overrule it or suggest that appellate courts should not follow it. (See *Anzalone*, *supra*, 56 Cal.4th at pp. 558-559.) As such, we agree with *Thornton* that jury acknowledgment of the verdict in open court is essential to the validity of the verdict. (*Thornton*, *supra*, 155 Cal.App.3d at p. 858; see *People v. Traugott* (2010) 184 Cal.App.4th 492, 500, quoting *Green*, *supra*, 31 Cal.App.4th at p. 1009 ["it is 'the oral declaration of the jurors, not the submission of the written verdict forms [that] constitutes the *return* of the verdict' "].)

Aguirre was entitled to have the jury openly acknowledge its verdict and confirm that each juror was willing to stand by his or her individual vote. The error is structural and requires reversal. (See *People v. Cahill* (1993) 5 Cal.4th 478, 501-502.) "[I]n some instances [errors] may result in a 'miscarriage of justice' . . . without regard to the strength of the evidence presented at trial, because . . . they operate to deny a criminal defendant the constitutionally required 'orderly legal procedure.' " (*Id*. at p. 501; see *Thornton*, *supra*, 155 Cal.App.3d at pp. 859-860.)

10

## E. Double Jeopardy

The Attorney General contends that if we reverse the verdict on the section 1192.7, subdivision (c)(8) allegation, we should remand the case to the trial court with directions to permit the People to retry the allegation if the District Attorney should choose to do so. It is argued that retrial would be permitted by proper interpretation of the double jeopardy clause. Aguirre argues that setting aside the verdict for procedural error is the equivalent of granting a mistrial without manifest necessity which would bar retrial.

The Attorney General does not represent that the People are committed to a retrial if allowed, or that there is anything in this record to indicate any interest expressed by the People in an actual retrial.[3] Essentially, the Attorney General is seeking our approval of the theoretical possibility of retrial. In short, we are asked to issue an advisory opinion on a significant constitutional issue as an abstract proposition. We decline to do so.

If the People, at some point, should attempt a new jury trial on the issue of the truth of the serious felony allegation, the parties will have the opportunity to present their arguments to the trial court. Any appellate review of such matter would then be based on a full record with adequate briefing.

## DISPOSITION

The written verdict of the true finding on the allegation that Aguirre had personally inflicted great bodily injury on the victim in violation of section 1192.7, subdivision (c)(8) is reversed. In all other respects, the judgment is affirmed. The superior court shall amend the abstract of

---

[3] Based on our collective experience, we seriously doubt that either the People or the Superior Court will have any interest in conducting a full jury trial, in the midst of a pandemic to prove the truth of an allegation that would have no impact on the judgment or sentence in this case.

11

judgment consistent with this opinion and forward same to the Department of Corrections and Rehabilitation.

HUFFMAN, Acting P. J.

WE CONCUR:


HALLER, J.


DATO, J.