Filed 12/10/20  P. v. Santana CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE, | C089049 |
| Plaintiff and Respondent, | (Super. Ct. Nos. LOD-CR-FE-2000-0000548 & LF005462A) |
| v. | |
| RUBEN MARTIN SANTANA, | |
| Defendant and Appellant. | |

Defendant Ruben Martin Santana appeals the trial court's order denying his petition for resentencing under Penal Code section 1170.95.[1]  Defendant argues the court erred by summarily denying his petition without first appointing counsel.  The People concede the error, but argue it was harmless because the record of conviction shows defendant is ineligible for relief as a matter of law.  Because we agree that defendant is

---

[1]     Undesignated statutory references are to the Penal Code.

1

ineligible for relief as a matter of law, and that any error in failing to appoint counsel would be harmless under any standard, we affirm.

LEGAL BACKGROUND

Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437), which became effective on January 1, 2019, was enacted to amend the felony-murder rule and the natural and probable consequences doctrine "to ensure that murder liability is not imposed on a person who [was] not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) To accomplish this, the bill amended section 188, which defines malice, and section 189, which defines the degrees of murder. (*People v. Anthony* (2019) 32 Cal.App.5th 1102, 1148.)

As amended, section 188 now provides: "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).) By requiring a showing of malice for murder (other than first degree felony murder), the statute eliminates vicarious murder liability for aiding and abetting a lesser offense under the natural and probable consequences doctrine. (§ 188.) The amendments did not, however, repeal the law imposing criminal liability for implied malice murder.

New section 189, subdivision (e) limits the circumstances under which a person may be convicted of first degree felony murder. (§ 189, subd. (e).) Before the enactment of Senate Bill 1437 (2017-2018 Reg. Sess.), a defendant who intended to commit a specified felony could be convicted of first degree murder for a killing committed in the perpetration of (or attempt to perpetrate) specified felonies, without further examination of his or her mental state. (*People v. Superior Court (Gooden)* (2019) 42 Cal.App.5th 270, 275.) Amended section 189, subdivision (e) now provides: "A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which a

2

death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life . . . ." (§ 189, subd. (e).)

Senate Bill 1437 (2017-2018 Reg. Sess.) also established a procedure for qualified persons to seek retroactive relief based on these changes in the law. (Stats. 2018, ch. 1015, § 4.) Under section 1170.95, subdivision (a), a person convicted of felony murder or murder under a natural and probable consequences theory may file a petition to vacate their conviction and obtain resentencing where specified conditions are met. (§ 1170.95, subd. (a).) The specified conditions are that "(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine[;] [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder[;] [¶] [and] (3) The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (a).)

The petitioner has the burden of making a prima facie showing that he or she is entitled to relief. (§ 1170.95, subd. (c).) If that burden is met, the court must issue an order to show cause and hold a hearing to determine whether to vacate the murder conviction and resentence the petitioner on the remaining counts. (§ 1170.95, subds. (c), (d).) At any such hearing, the prosecution bears the burden of proving beyond a reasonable doubt that the defendant is ineligible for resentencing. (§ 1170.95, subds. (d)(3).) The prosecution and the petitioner may "rely on the record of conviction or offer new or additional evidence to meet their respective burdens." (§ 1170.95, subd. (d)(3).)

3

FACTUAL AND PROCEDURAL BACKGROUND

On October 24, 2000, Johnny Moreno (Moreno) was killed in a gang-related drive-by shooting. Following the killing, an information was filed against defendant charging him with murder (§ 187; count 1), shooting at an occupied motor vehicle (§ 246; counts 2 & 4), shooting at an inhabited dwelling (§ 246; count 3), possession of a firearm by a felon (former § 12021, subd. (a); counts 5 & 6), possession of ammunition by a felon (former § 12316, subd. (b)(1); count 7), and street terrorism (§ 186.22, subd. (a); count 8). The information also included special circumstance allegations as well as firearm and gang enhancements. (§ 190.2. subd. (a)(21) & (22), former § 12022.53, subd. (d), former § 12022.55, former § 12022.5, subd. (a)(1), § 186.22, subd. (b)(1).)

A.      *Preliminary hearing evidence*

A preliminary hearing was held in April 2001. This summary of the facts is drawn from the preliminary hearing transcript.[2]

Defendant, also known as "Cartoon," is a member of the Sureño street gang. The victim, Moreno, is a member of the rival Norteño street gang.

On October 24, 2000, defendant was walking down the street with his cousin and his cousin's girlfriend when a white Chevrolet approached. The Chevrolet was occupied by three or four Norteño gang members, including Moreno. As the vehicle passed, defendant and Moreno made eye contact. Defendant recognized Moreno as someone who had caused him problems in the past. Moreno noticed defendant and remarked to the other occupants of the vehicle, "There's that fool Cartoon." The vehicle's windows

---

[2]      In both parties' briefs, the facts underlying defendant's conviction were taken from the probation officer's presentence report. It is an open question whether a court may consider facts in a probation officer's presentence report to determine a defendant's eligibility for resentencing. (See, e.g., *People v. Trujillo* (2006) 40 Cal.4th 165, 178-180; *People v. Burnes* (2015) 242 Cal.App.4th 1452, 1458; *People v. Banda* (2018) 26 Cal.App.5th 349, 357-359.) We need not decide that question here because we instead rely on the facts in the preliminary hearing transcript.

were rolled down and the two groups began yelling obscenities and pejorative terms at each other. One occupant of the vehicle yelled, "What the fuck are you guys doing in our neighborhood?" Defendant threw up his arms as if to say, "What are you going to do about it?"

The driver of the Chevrolet stopped and Moreno and the other Norteños started to exit the vehicle. As they did so, defendant pulled out a large, silver revolver and pointed it at them. Defendant's cousin saw defendant pull out the gun and told defendant to "hold back" and not to do anything he did not have to do. The cousin told defendant there were "too many witnesses" and that defendant "might hit an innocent bystander." Defendant told him to "quit worrying about his business."

Upon seeing defendant's gun, the Norteños got back into the Chevrolet and started to drive away. As they were leaving, defendant fired two shots at or above their vehicle.

A short time later, at another location, the driver of the Chevrolet stopped the vehicle, and Moreno and the others got out to check it for damage. As they were inspecting the vehicle, a green Mazda arrived at the scene. The Mazda was being driven by Mario Angulo (Angulo),[3] another Sureño, and defendant was sitting in the front passenger seat. As the Mazda approached the white Chevrolet, witnesses described seeing defendant lean across the driver of the vehicle, point a silver gun out the driver's window, and fire several shots at the Norteños standing by the vehicle. Shots fired from within the Mazda struck a house, a vehicle parked in front of the house, the white Chevrolet, which was parked in front of the house next door to the house that was struck, and Moreno.

---

[3]     Angulo was convicted by a jury of first degree murder (§ 187, subd. (a)), shooting from a motor vehicle (§ 12034, subd. (d)), active participation in a criminal street gang (§ 186.22, subd. (a)), and possession of a firearm by a prohibited person (§ 12021, subd. (e)). (*People v. Angulo* (Mar. 13, 2008, C053070) [2008 Cal. App. Unpub. LEXIS 2119, at *1] [nonpub. opn.].)

Moreno died from a single gunshot wound to the chest. An autopsy performed on Moreno revealed a 0.9- to 1.0-centimeter perforation in his rib cage. Although not qualified as a gun or forensic expert, a peace officer testified that the perforation in Moreno's rib cage was approximately the same diameter as a .38-caliber bullet. When defendant was arrested, he had a .38-caliber handgun, as well as .38-caliber cartridges, in his possession.

During his booking interview, defendant admitted that he and Angulo were involved in Moreno's shooting. Defendant told officers that Angulo had two guns, a .22-caliber and .38-caliber, and that Angulo had fired the .22 and defendant had fired the .38. Defendant admitted that he fired the gun towards a group of people that included Moreno. Defendant did not, however, admit that he was trying to kill Moreno or any of the Norteños. Defendant claimed that he was just trying to scare them.

At the end of the preliminary hearing, defense counsel argued that defendant should not be held to answer on the charge of first degree murder with special circumstances because it was "open to question" whether defendant fired the fatal shot. The People responded that defendant should be held to answer because he was liable either as the actual killer or as an aider and abettor.[4] Specifically, the prosecutor stated, "Well, I'm sure the Court is well aware that to be a principal, therefore to be liable for the charges, not only does this apply to say the actual killer, but those are for aiding and abeting [*sic*]. [¶] And it's quite clear from all of the circumstances at the very minimum, if not the actual killer, that [defendant] would be acting as an aider and abettor . . . ." Defendant was held to answer.

---

**4**      There was no discussion of felony murder or the natural and probable consequences doctrine.

B. *Plea and sentencing*

On January 22, 2002, defendant pleaded no contest to one count of second degree murder (§ 187) with a gang enhancement (§ 186.22, subd. (b)(1)); two counts of possession of a firearm by a felon (former § 12021, subd. (a)); one count of possession of ammunition by a felon (former § 12316, subd. (b)(1)); and one count of street terrorism (§ 186.22, subd. (a)). Defendant also admitted it was a drive-by murder within the meaning of section 190, subdivision (d).

In exchange for the plea, the People dismissed the remaining charges. Defendant stipulated that the transcript from his four-day preliminary hearing would provide the factual basis for the plea. The court sentenced defendant to an aggregate determinate term of five years, and an indeterminate term of 15 years to life for the murder conviction plus five years for the gang enhancement.

C. *Postconviction petition for resentencing*

In January 2019, following the enactment of Senate Bill 1437 (2017-2018 Reg. Sess.), defendant filed a petition for resentencing under section 1170.95. Using a preprinted form prepared by a cosponsor of the legislation (see *People v. Verdugo* (2020) 44 Cal.App.5th 320, 324, review granted Mar. 18, 2020, S260493 (*Verdugo*)), defendant checked boxes stating that (1) a complaint or information was filed against him that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine; (2) he pleaded guilty or no contest to first or second degree murder in lieu of going to trial because he believed he could have been convicted of first or second degree murder at trial under the felony-murder rule or the natural and probable consequences doctrine; and (3) he could not now be convicted of first or second degree murder because of the changes made to sections 188 and 189. Defendant also checked boxes stating, in conclusory language, that he was not the actual killer, that he did not, with the intent to kill, aid or abet the actual killer, and that he was

7

not a major participant in the felony acting with reckless indifference to human life.[5] Defendant also checked a box requesting appointment of counsel.

The trial court summarily denied defendant's section 1170.95 petition without appointing counsel.[6] The court concluded that defendant was ineligible for relief under the statute as a matter of law because the evidence in the court's file and defendant's preliminary hearing transcript showed that defendant was the actual killer who "fired the fatal shot" that resulted in Moreno's death. Further, even if defendant was not the actual killer, the court concluded that defendant, at minimum, aided or abetted with the intent to kill and/or was a major participant in the underlying felony who acted with reckless indifference to human life. Petitioner timely appealed the order denying his petition.[7]

## DISCUSSION

## I

### *Summary Denial & Failure to Appoint Counsel*

At issue in this case is when the right to counsel arises under section 1170.95, subdivision (c), which provides: "The court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section. If the petitioner has requested counsel, the court shall appoint counsel to

---

[5] Defendant identified no facts to support such conclusions.

[6] The trial court initially denied the petition by ex parte order issued on February 20, 2019. Defendant filed a notice of appeal on March 13, 2019. Subsequently, the trial court issued a "corrected" statement of decision and order denying the petition on March 20, 2019, which appears to be a verbatim copy of the one filed on February 20, but with slightly different formatting. In an order dated July 31, 2019, we agreed to construe defendant's notice of appeal as encompassing the corrected order. Accordingly, our discussion focuses on the March 20 corrected order.

[7] We assume, without deciding, that defendant may appeal the trial court's denial of his petition without obtaining a certificate of probable cause. (*People v. Stamps* (2020) 9 Cal.5th 685, 698.)

represent the petitioner. The prosecutor shall file and serve a response within 60 days of service of the petition and the petitioner may file and serve a reply within 30 days after the prosecutor response is served. . . . If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause." (§ 1170.95, subd. (c).) The proper construction of section 1170.95 presents an issue of statutory interpretation, which we review de novo. (*People v. Law* (2020) 48 Cal.App.5th 811, 819, review granted July 8, 2020, S262490 (*Law*).)

Defendant construes the relevant text to mean that when a petitioner files a facially sufficient petition with a request for counsel, the court must appoint counsel and entertain briefing before determining whether the petitioner has stated a prima facie case for relief. Because the trial court instead summarily denied his petition, without appointing counsel, defendant contends the court violated the statute.[8]

Appellate courts are split on whether a trial court may summarily deny a resentencing petition under section 1170.95 without first appointing counsel. Broadly, two lines of authority have developed.

The majority view, represented by *Verdugo, supra*, 44 Cal.App.5th 320, review granted March 18, 2020, S260493, is that if "readily ascertainable" information in the court's file or record of conviction establishes that the petitioner is ineligible for relief as a matter of law, a trial court may deny the petition without appointing counsel. (*Id*. at pp. 323, 329-330.) In *Verdugo*, the court inferred from the structure of the statute that it prescribes two separate prima facie reviews, "one made before [the appointment of counsel and before] any briefing to determine whether the petitioner . . . may be eligible for relief . . . and a second after briefing by both sides to determine whether the petitioner has made a prima facie showing he or she is entitled to relief." (*Verdugo*, at p. 328,

---

[8] Defendant also argues, in the alternative, that the trial court's summary denial deprived him of his constitutional rights to due process and to the assistance of counsel.

review granted Mar. 18, 2020, S260493; accord, *People v. Lewis* (2020) 43 Cal.App.5th 1128, 1140, review granted Mar. 18, 2020, S260598 (*Lewis*); *People v. Cornelius* (2020) 44 Cal.App.5th 54, 57-58, review granted Mar. 18, 2020, S260410.)

The *Verdugo* court held that the purpose of the first prima facie review is to decide whether the petitioner is ineligible for relief as a matter of law. (*Verdugo, supra*, 44 Cal.App.5th at pp. 329-330, review granted Mar. 18, 2020, S260493.) In this way, trial courts "perform a substantive gatekeeping function, screening out clearly ineligible petitioners before devoting additional resources to the resentencing process" (*id*. at p. 331), a concept that the court characterized as a "well-established part of the resentencing process under Propositions 36 and 47." (*Id*. at p. 329.) Further, in performing this preliminary screening function, courts are not limited to the allegations of the petition; rather, they may review any "readily ascertainable" information in the court file or otherwise part of the record of conviction. (*Verdugo*, at p. 329; accord, *Lewis, supra*, 43 Cal.App.5th at pp. 1137-1139, review granted Mar. 18, 2020, S260598.) Thus, if the record of conviction establishes as a matter of law that the petitioner is ineligible for relief, the trial court may deny the petition without appointing counsel or conducting further proceedings. (*Verdugo*, at pp. 329-330, 332-333; *Lewis*, at pp. 1139-1140; *People v. Cornelius, supra*, 44 Cal.App.5th at p. 58, review granted Mar. 18, 2020, S260410.)

The minority view, represented by *People v. Cooper* (2020) 54 Cal.App.5th 106, review granted November 10, 2020, S264684, holds that the right to counsel attaches immediately upon the filing of a facially complete petition. (*Id*. at p. 109.) In *Cooper*, the Court of Appeal, First Appellate District, Division One, rejected the view that section 1170.95, subdivision (c) requires two prima facie reviews and that the petitioner is entitled to counsel only during the second one. (*Id*. at pp. 118, 123.) While acknowledging that the allegations of a petition may be contradicted by the record of conviction, the court concluded the Legislature intended prosecutors, not courts, to take

10

the lead in identifying which petitioners are ineligible for relief as a matter of law.  (*Id*. at pp. 122-123.)

The question of when in the process of reviewing a section 1170.95 petition the right to appointed counsel arises is now pending before our Supreme Court.**9**  We need not reach that issue, however, because we agree with the People that even if the trial court erred by not appointing counsel, the error would be harmless.  The record of conviction shows that defendant was ineligible for relief as a matter of law.

As a threshold matter, we reject defendant's assertion that any error was structural and therefore reversible per se.  A structural error is a " 'defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself.' " (*Johnson v. United States* (1997) 520 U.S. 461, 468 [137 L.Ed.2d 718, 728]; *People v. Anzalone* (2013) 56 Cal.4th 545, 554.)  It is an error that " ' "transcends the criminal process" ' and 'def[ies] analysis by "harmless-error" standards.' " (*People v. Marshall* (1996) 13 Cal.4th 799, 851.)  Courts have found structural errors only in very limited circumstances, such as total deprivation of counsel at trial or trial by a biased judge. (*Anzalone, supra*, 56 Cal.4th at p. 554.)  We see nothing about the trial court's alleged error which renders it fundamentally unfair or precludes meaningful appellate review of its prejudicial impact.  Thus, we conclude that the claimed error is subject to a harmless error analysis.

The parties dispute whether the trial court's alleged error should be reviewed under the standard for federal constitutional errors set forth in *Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711] or the less stringent standard set forth

---

**9**     The Supreme Court has granted review to decide (1) whether trial courts may consider the record of conviction in determining whether a defendant has made a prima facie showing under section 1170.95, and (2) when in the process the right to appointed counsel arises.  (See order granting review of *Lewis, supra*, 43 Cal.App.5th 1128, Mar. 18, 2020, S260598.)

in *People v. Watson* (1956) 46 Cal.2d 818, 836. The People appear to have the better argument. (*People v. Epps* (2001) 25 Cal.4th 19, 28-29 [denial of right that is "purely a creature of state statutory law" is subject to *Watson*]; *In re Melvin A*. (2000) 82 Cal.App.4th 1243, 1252-1253 [violation of statutory right to counsel is properly reviewed under *Watson*]; *People v. Johnson* (2016) 1 Cal.App.5th 953, 968 [error related to resentencing petition under Proposition 47 reviewed under *Watson*]; cf. *People v. Fryhaat* (2019) 35 Cal.App.5th 969, 984.) But we would reach the same conclusion under either standard. (*People v. Edwards* (2020) 48 Cal.App.5th 666, 675, review granted July 8, 2020, S262481; *Law, supra*, 48 Cal.App.5th at p. 826, review granted July 8, 2020, S262490.) The record conclusively establishes that defendant is ineligible for relief as a matter of law. Given the evidence, it is beyond a reasonable doubt that appointment of counsel could not have changed this. We reach this conclusion for two reasons.

First, by its terms, only "[a] person convicted of felony murder or murder under a natural and probable consequences theory" is eligible for relief under section 1170.95. (§ 1170.95, subd. (a).) Here, the transcripts from defendant's preliminary hearing demonstrate that defendant was not convicted under a felony-murder or natural and probable consequences theory.[10] Rather, he was convicted of second degree murder based on a theory of express or implied malice.

Whether or not the evidence theoretically could have supported a conviction based on felony murder or the natural and probable consequences doctrine is beside the point, as there is nothing in the record to suggest the People intended to proceed on any theory other than defendant being liable for the murder as the actual killer or, at minimum, as a

---

**10** The facts in defendant's preliminary hearing transcript provide the factual basis for his plea, and is part of the record of his conviction. (*People v. Perez* (2020) 54 Cal.App.5th 896, 905 (*Perez*); *People v. Sohal* (1997) 53 Cal.App.4th 911, 915.)

direct aider and abettor who acted with intent to kill, as charged in the information. (*People v. Thomas* (1987) 43 Cal.3d 818, 829, fn. 5 [notice of charged offense given by the transcript of the preliminary hearing]; *People v. Gurule* (2002) 28 Cal.4th 557, 629 [same].) There was no discussion of holding defendant liable under the felony-murder rule based on his participation in an underlying felony, or any discussion of a "target" offense that could serve as the basis of liability under the natural and probable consequences doctrine.

"If [defendant] had gone to trial, and the parties had presented no argument and the trial court had given no instructions regarding felony murder or murder under a natural and probable consequences theory, there is no question [defendant] would be unable to make a prima facie showing that he is entitled to relief under section 1170.95. [Citation.] [Defendant's] murder conviction after a guilty plea should not be accorded less weight . . . ." (*People v. Nguyen* (2020) 53 Cal.App.5th 1154, 1167; see *Perez, supra*, 54 Cal.App.5th at p. 907 [defendant's averments that he was not the actual killer inconsistent with record of conviction].)

Although defendant checked a box alleging that he agreed to the plea because he believed he could have been convicted under the felony-murder rule or the natural and probable consequences theory, we agree with our colleagues in other courts that a trial court is not required to accept assertions in a petition when the record refutes them. (See, e.g., *People v. Nguyen, supra*, 53 Cal.App.5th at pp. 1165-1166.) As the *Lewis* court aptly summarized: " 'It would be a gross misuse of judicial resources to require the issuance of an order to show cause or even appointment of counsel based solely on the allegations of the petition, which frequently are erroneous, when even a cursory review of the court file would show as a matter of law that the petitioner is not eligible for

13

relief.' "[11] (*Lewis, supra*, 43 Cal.App.5th at p. 1138, review granted Mar. 18, 2020, S260598.)

Second, even if we assumed for argument's sake that defendant was convicted under the felony-murder rule or the natural and probable consequences doctrine, to be eligible for relief under section 1170.95, defendant must show that he could not be convicted of first or second degree murder after the changes made by Senate Bill 1437 (2017-2018 Reg. Sess.). (§ 1170.95, subd. (a)(3).) But even after Senate Bill 1437, a person is liable for murder if he or she was the actual killer, aided and abetted a murder with intent to kill, or was a major participant in the felony who acted with reckless indifference to human life. (§ 189, subd. (e).) Likewise, an aider and abettor is still liable for murder if he or she acted with implied malice, which does not require an intent to kill. (*People v. Gonzalez* (2012) 54 Cal.4th 643, 653 ["[m]alice is implied when a person willfully does an act, the natural and probable consequences of which are dangerous to human life, and the person knowingly acts with conscious disregard for the danger to life that the act poses"].) "One who directly aids and abets another who commits murder is thus liable for murder under the new law just as he or she was liable under the old law." (*Lewis, supra*, 43 Cal.App.5th at p. 1135, review granted Mar. 18, 20202, S260598.)

---

**11** Looking beyond the face of a petition is appropriate where, as here, the petitioner has failed to provide or discuss any of the specific facts pertaining to his or her conviction. (See *People v. Gomez* (2020) 52 Cal.App.5th 1, 16, review granted Oct. 14, 2020, S264033.) A prima facie showing refers to those facts that will sustain a favorable decision if the factual allegations are taken as true. (*People v. Johnson* (2015) 242 Cal.App.4th 1155, 1163; *Lewis, supra*, 43 Cal.App.5th at p. 1137, review granted Mar. 18, 2020, S260598.) Conclusory allegations that the requirements of a statute have been satisfied, without any discussion of the specific facts or evidence at issue in the petitioner's case, generally are insufficient to establish a prima facie showing for relief. (*People v. Karis* (1988) 46 Cal.3d 612, 656.)

Here, the record of conviction conclusively establishes that defendant was, at a minimum, a major participant in the felony who acted with reckless indifference to human life. The evidence shows that after a confrontation with a rival gang, defendant and another member of his gang traveled to another location where they committed a drive-by shooting in retaliation for the other gang's disrespect. Defendant admitted that he fired shots out of the vehicle's window towards the rival gang members. Even if there were some lingering uncertainty about whether defendant was the actual killer, the record of conviction conclusively shows that defendant at least aided and abetted with implied malice and/or was a major participant in the felony acting with reckless indifference to human life. (See, e.g., *People v. Taylor* (2004) 32 Cal.4th 863, 868-869; *People v. Moore* (2010) 187 Cal.App.4th 937, 941; *People v. Banks* (2015) 61 Cal.4th 788, 801-802; *People v. Clark* (2016) 63 Cal.4th 522, 614-615.)[12] Thus, defendant could be convicted of murder even after the changes made by Senate Bill 1437 (2017-2018 Reg. Sess.).

---

**12** We acknowledge and agree with those authorities holding that, when assessing a prima facie showing, trial courts generally should assume the facts stated in the petition are true and should decline to find a prima facie case only where the defendant is ineligible as a matter of law and there is no contested issue of fact or law. (*People v. Tarkington* (2020) 49 Cal.App.5th 892, 909, review granted Aug. 12, 2020, S263219; *People v. Drayton* (2020) 47 Cal.App.5th 965, 980-982; *People v. Smith* (2020) 49 Cal.App.5th 85, 95-96, review granted July 22, 2020, S262835; cf. *Law, supra*, 48 Cal.App.5th at p. 826, review granted July 8, 2020, S262490 [analyzing whether facts in record show defendant was major participant who acted with reckless indifference to human life]; *People v. Garcia* (2020) 57 Cal.App.5th 100, 116 [disagreeing with *Drayton* that petitioner's assertions must be conclusively refuted as matter of law].) Where opposing inferences are possible, trial courts should appoint counsel and permit briefing, and then, if petitioner's entitlement to relief still remains unresolved, issue an order to show cause for an evidentiary hearing. But where, as here, the facts in the record of conviction support only one legitimate inference on an issue that establishes the petitioner is ineligible for relief as a matter of law, we conclude no purpose would be served by reversing an order denying a petition and remanding the matter for further proceedings. (See, e.g., *Tarkington, supra*, 49 Cal.App.5th at pp. 909-910, review granted Aug. 12, 2020, S263219; *Perez, supra*, 54 Cal.App.5th at pp. 906-907.)

Accordingly, we conclude the trial court properly determined that defendant was ineligible for resentencing because his conviction survives the changes made by Senate Bill 1437 (2017-2018 Reg. Sess.).  Thus, any alleged error in failing to appoint counsel before denying the petition was harmless beyond a reasonable doubt.[13]

DISPOSITION

The trial court's order denying defendant's resentencing petition is affirmed.


      KRAUSE      , J.


We concur:


      ROBIE      , Acting P. J.


      DUARTE      , J.

---

[13] This conclusion renders it unnecessary for us to decide whether the trial court's actions violated defendant's Sixth Amendment right to the assistance of counsel and Fourteenth Amendment right to due process.