Filed 8/22/22  P. v. Allen CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B316834 |
| Plaintiff and Respondent, | Los Angeles County |
| v. | Super. Ct. No. TA040368 |
| ALTON CHARLES ALLEN, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, John L. Lonergan, Judge. Affirmed.

John Steinberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Acting Assistant Attorney General, Daniel Chang and Ryan M. Smith, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

In 1997, a jury convicted Alton Charles Allen of the first degree murder of Emery Hughes. The jury also found true the allegations that Allen personally used a deadly and dangerous weapon (a knife) and committed the murder during a burglary. This court affirmed Allen's conviction on direct appeal in 1999. (*People v. Allen* (1999) 72 Cal.App.4th 1093 (*Allen I*).)[1]

In 2021, Allen filed a petition for resentencing under Penal Code[2] section 1170.95,[3] arguing he could not now be convicted of first or second degree murder under sections 188 and 189 as those statutes were amended by Senate Bill No. 1437 (S.B. 1437). The trial court appointed counsel for Allen, found he met his prima facie burden, issued an order to show cause, and set the matter for an evidentiary hearing. Following the hearing, the court found that, as the actual killer, Allen is ineligible for relief and denied his petition.

Allen appeals, arguing the court erred in relying on the factual recitation contained in *Allen I* in making its ruling on his resentencing petition. Specifically, Allen notes that after the court denied his petition, the California Legislature enacted

---

[1] Allen's statement of facts in his opening brief is derived from *Allen I*, and that opinion is included in the record on appeal. Our summary of the facts and procedural history are taken from *Allen I* and the record in this appeal.

[2] All undesignated statutory references are to the Penal Code.

[3] Effective June 30, 2022, Penal Code section 1170.95 was renumbered section 1172.6, with no change to the text (Stats. 2022, ch. 58, § 10). For convenience, we refer to the former statute number throughout this opinion.

Senate Bill No. 775 (S.B. 775) (Stats. 2021, ch. 551, § 2), which amended section 1170.95 in a number of ways. As relevant here, S.B. 775 clarified that "[t]he admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed. The court may also consider the procedural history of the case recited in any prior appellate opinion." (§ 1170.95, subd. (d)(3).) Allen contends the amended statute applies in this case, and that the court erred in relying exclusively on the factual summary in our prior opinion.

We conclude Allen has failed to establish that the court relied on the factual recitation in our prior opinion. In any event, Allen's conclusory assertion that he was prejudiced by the purported error is undeveloped and inadequate to support a reversal of the order. Accordingly, we affirm.

## BACKGROUND

### 1. The Underlying Crimes

Hughes and Phyllis H. (Phyllis) were asleep in Hughes's house one evening in October 1994. A rumbling in the bed woke Phyllis and she immediately saw a masked intruder in the bedroom. The intruder was struggling with Hughes and stabbing him with a knife. Phyllis begged him to stop and told the intruder Hughes had no money. But the intruder persisted, attacking Hughes with the knife, then beating and kicking him repeatedly. After ransacking the bedroom, the intruder took a dollar and change from Hughes's pocket. He then raped Phyllis before fleeing from Hughes's home. Hughes was stabbed seven times

3

and died later that night. (*Allen I, supra*, 72 Cal.App.4th at pp. 1095–1096.)

The subsequent investigation by law enforcement showed that a window in the laundry room at the rear of the house was open and the screen had been cut recently. Allen's fingerprints were found on the top of the washing machine below the window. Based on the fingerprint match, an arrest warrant was issued and Allen was arrested. He denied knowing Hughes and said he had never been on the street where Hughes lived. (*Allen I, supra*, 72 Cal.App.4th at p. 1096.)

**2.      The Charges and Jury Trial**

The People filed an information on June 29, 1995, charging Allen with four felony counts. The first count, as to Hughes, charged Allen with murder (§ 187, subd. (a)), and alleged he committed the murder during a burglary (§ 190.2, subd. (a)(17)) and personally used a knife during the commission of the offense (§ 12022, subd. (b)). The remaining counts, as to Phyllis, alleged forcible oral copulation (count 2, former § 288a, subd. (c)), forcible rape (count 3, § 261, subd. (a)(2)), and assault with a deadly weapon causing great bodily injury (count 4, § 254, subd. (a)(1)). The People also alleged Allen personally used a knife during the commission of the offenses in counts 2 and 3 (§ 12022.3, subd. (a)).

A 13-day jury trial took place in mid-1997. In addition to presenting witnesses that discussed the evidence summarized above, the People presented several expert witnesses who testified to the results of DNA testing performed on a semen sample recovered from Phyllis's clothing. One expert concluded the semen could not have been produced by Hughes. That expert, and others, testified to the likelihood that the semen was

4

produced by Allen. (*Allen I, supra,* 72 Cal.App.4th at pp. 1096–1097.) Allen, who testified in his defense, denied that he was the intruder and said he had been home with his father when the incident occurred. He admitted, however, that he had been at Hughes's house on prior occasions to deliver drugs to Phyllis and on one occasion had exchanged drugs for sex with her. (*Id.* at pp. 1097–1098.) Allen explained that he initially denied knowing Hughes because he knew Hughes by a nickname ("Red") and denied ever visiting Hughes's house because he did not want to get involved with a murder investigation. (*Id.* at p. 1098.)

The jury convicted Allen on two counts. On count 1, the jury found Allen guilty of first degree murder and found true the allegations that he murdered Hughes during a burglary and used a knife during the commission of the offense. On count 3, the jury found Allen guilty of forcible rape but found the allegation regarding the use of a knife not true. The jury acquitted Allen on count 4, the assault charge. The court declared a mistrial as to count 2, as the jury was unable to reach a verdict after extended deliberation.

The court sentenced Allen to serve a life sentence without the possibility of parole on count 1 and seven years on count 3.

## 3.    Resentencing Proceedings

In April 2021, Allen, representing himself, filed a petition for resentencing under section 1170.95 alleging he was eligible for relief because he was prosecuted and convicted under the felony murder rule and was not the actual killer. The court appointed counsel for Allen.

In July 2021, the People filed an opposition to the petition. They argued Allen failed to make a prima facie showing that he is eligible for resentencing because he was the actual killer who

stabbed the victim to death. The People's summary of the evidence in their opposition was derived from our opinion in *Allen I*. They noted, however, that in reviewing the petition, the court may consider the entire record of conviction including the facts underlying the conviction. In his reply, Allen, now represented by counsel, argued that he made the necessary prima facie showing and urged the court to issue an order to show cause and conduct an evidentiary hearing under subdivision (d) of section 1170.95. The court subsequently found Allen met his prima facie burden, issued an order to show cause, and set the matter for an evidentiary hearing.

The hearing took place on November 16, 2021. After counsel argued, the court denied the petition stating that Allen was not entitled to relief under section 1170.95 as a matter of law. The court summarized its ruling as follows: "The petitioner was the actual killer. The petitioner broke into the victim's house, beat and stabbed victim [Hughes] several times which resulted in his death. He then raped victim Phyllis. He stole a dollar and some change. And the petitioner's fingerprints were found at the crime scene and his DNA matched a semen stain found on the victim's pants." Further, "[t]he jury found the murder to be in the 1st degree and found the personal use of a weapon (knife) by the petitioner to be true."

4.    **Order Denying the Petition; Appeal**

The court entered a minute order denying the petition on November 16, 2021, and directed the clerk to send a copy to the parties. Allen appeals.

## DISCUSSION

Allen argues the court erred because it relied exclusively on the factual summary included in *Allen I* in deciding his petition. We conclude Allen has failed to demonstrate that the court relied on anything in *Allen I* and, in any event, has not demonstrated prejudice.

### 1. Changes to the Law of Murder and Section 1170.95

S.B. 1437, which took effect on January 1, 2019, "addresses certain aspects of California law regarding felony murder and the natural and probable consequences doctrine by amending Penal Code sections 188 and 189, as well as by adding [former] Penal Code section 1170.95, which provides a procedure by which those convicted of murder can seek retroactive relief if the changes in law would affect their previously sustained convictions." (*People v. Martinez* (2019) 31 Cal.App.5th 719, 722.) The legislation changed the law of murder to ensure a "person's culpability for murder [is] premised upon that person's own actions and subjective mens rea." (Stats. 2018, ch. 1015, § 1, subd. (g).) Under the amended statute, a person may be convicted of murder only if: (1) he was the actual killer; or (2) with the intent to kill, he aided and abetted the actual killer's commission of murder; or (3) he acted as a "major participant" in a felony listed in section 189 and acted with "reckless indifference to human life." (§ 189, subd. (e), as amended by Stats. 2018, ch. 1015, § 3; § 188, subd. (a)(3), as amended by Stats. 2018, ch. 1015, § 2.) S.B. 1437 also abolished second degree felony murder. (Stats. 2018, ch. 1015, § 2, amending § 188, subd. (e)(3).) Thus, the felony murder doctrine now applies only to those

7

felonies listed in section 189, subdivision (a), and to accomplices who meet the requirements in section 189, subdivision (e).

In addition to changing the law of murder prospectively, S.B. 1437 gave people who had been convicted of murder under one of the now-invalid theories the opportunity to petition for resentencing under section 1170.95. (Stats. 2018, ch. 1015, § 4.) In relevant part, section 1170.95 provides: "A person convicted of felony murder … may file a petition with the court that sentenced the petitioner to have the petitioner's murder … conviction vacated and to be resentenced on any remaining counts" if (1) the complaint or information filed against them "allowed the prosecution to proceed under a theory of felony murder"; (2) the petitioner was convicted of murder "following a trial or accepted a plea offer in lieu of a trial at which the petitioner could have been convicted" of murder; and (3) the "petitioner could not presently be convicted" of murder "because of changes to Section 188 or 189." (§ 1170.95, subd. (a).)

If the petitioner files a facially sufficient petition, the court must appoint counsel. (§ 1170.95, subd. (b)(3).) After allowing the parties to file briefs, the court must hold a hearing to "determine whether the petitioner has made a … prima facie showing that [he] is entitled to relief." (*Id*. at subd. (c).) If the petitioner makes such a showing, the court must "issue an order to show cause" and "hold a hearing to determine whether to vacate the murder … conviction and to recall the sentence." (*Id*. at subds. (c) & (d)(1).)

## 2. Evidence Considered at the Evidentiary Hearing

At the time the court denied Allen's resentencing petition, section 1170.95 did not expressly state what evidence was admissible and what materials a court may consider when

entertaining a resentencing petition at the evidentiary hearing. (Former § 1170.95, subd. (d), added by Stats. 2018, ch. 1015, § 4.) Our courts generally agreed, however, that the record of conviction—including a prior opinion by the court of appeal— could be considered. (See *People v. Williams* (2020) 57 Cal.App.5th 652, 660–663 [holding the trial court could consider the factual summary in an appellate opinion at a hearing under section 1170.95, subdivision (d)(3), because the factual summary was admissible as reliable hearsay].)

The Legislature amended section 1170.95 to read, as it does now, "At the hearing to determine whether the petitioner is entitled to relief, the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder or attempted murder under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019. The admission of evidence in the hearing shall be governed by the Evidence Code, except that the court may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed. The court may also consider the procedural history of the case recited in any prior appellate opinion. However, hearsay evidence that was admitted in a preliminary hearing pursuant to subdivision (b) of Section 872 shall be excluded from the hearing as hearsay, unless the evidence is admissible pursuant to another exception to the hearsay rule. The prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens." (Former section 1170.95, as amended by Stats. 2021, ch. 551, § 2, effective Jan. 1, 2022.) As the Court of Appeal explained in *People v. Clements* (2022) 75 Cal.App.5th 276, 292, with this

amendment, the "Legislature limited use of prior appellate opinions [in hearings under section 1170.95, subdivision (d)], allowing trial judges to 'consider the procedural history of the case recited,' " and "the Legislature has decided trial judges should not rely on the factual summaries contained in prior appellate decisions when a section 1170.95 petition reaches the stage of a full-fledged evidentiary hearing."

Our appellate courts have held that the new amendments to section 1170.95 apply retroactively to appeals from the denial of petitions, such as the present one, that were not yet final as of January 1, 2022. (E.g., *People v. Basler* (2022) 80 Cal.App.5th 46, 56; *People v. Porter* (2022) 73 Cal.App.5th 644, 652; *People v. Montes* (2021) 71 Cal.App.5th 1001, 1006–1007; and see *People v. Vieira* (2005) 35 Cal.4th 264, 305 [noting that "a defendant generally is entitled to benefit from amendments that become effective while his case is on appeal"].)

### 3.    Allen has failed to establish either error by the trial court or prejudice from the alleged error.

Allen asserts the court improperly relied on our prior opinion in *Allen I* and seeks a reversal on that basis. Allen focuses on the portion of section 1170.95, subdivision (d)(3), which now states, "The court may also consider the procedural history of the case recited in any prior appellate opinion." And he claims the court erred because it "relied only on the *factual summary* of the crime in the prior opinion of this Court,

reproduced in the People's response to the petition."[4] (Italics added.)

To support his claim that the trial court relied solely on the factual summary in *Allen I*, Allen asserts that "[a]t the subdivision (d)(3) hearing, the superior court stated only that it had reviewed the petition for resentencing and the People's response. The denial of the petition was thus based solely upon the court's review of the factual summary contained in this Court's prior opinion. Pursuant to [S.B. 775], the prior opinion was admissible *only* for the procedural history."

We disagree with Allen's characterization of the court's remarks. The court did state, for the record, that it had reviewed Allen's resentencing petition and the People's opposition. The court gave no indication, however, that it limited its review to those materials. Indeed, the court never explicitly mentioned *Allen I*, or that it was relying on the facts set forth in that opinion, when it explained its ruling denying Allen's resentencing opinion. Furthermore, during the argument on the resentencing petition, counsel cited evidence not included in the factual summary in *Allen I*. Allen's counsel, for example, noted that Phyllis had been unable to identify Allen as her assailant—an issue not mentioned in our prior opinion. (See *Allen I, supra*, 72 Cal.App.4th at pp. 1095–1098.) We also note that during the hearing, the prosecutor referred the court to the trial evidence: "The evidence in this case was overwhelming at the time of trial and is still overwhelming based on the record of conviction that

---

[4] The People did not actually "reproduce" the factual summary from *Allen I* in their opposition brief. But, as the People noted, the factual summary was derived from *Allen I*.

11

Allen is the actual killer[.]" Thus, while some of the facts the court discussed in its ruling were also set forth in *Allen I*, that is hardly surprising. The facts in *Allen I* came from the same source: the record from Allen's murder trial.

In short, Allen has failed to carry his burden to establish that the court erred. (*People v. Giordano* (2007) 42 Cal.4th 644, 666 ["On appeal, we presume that a judgment or order of the trial court is correct, ' "[a]ll intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown." ' "].)

In any event, even if the court did err, Allen has failed to establish any prejudice resulting from that error. Allen acknowledges that in order to obtain a reversal on the basis of a violation of a state evidentiary rule, he would need to demonstrate that there is a reasonable probability that the outcome would have been different had the violation not occurred. (Cal. Const., art. VI, § 13 ["No judgment shall be set aside, or new trial granted, in any cause, on the ground of misdirection of the jury, or of the improper admission or rejection of evidence, or for any error as to any matter of pleading, or for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice."]; *People v. Anzalone* (2013) 56 Cal.4th 545, 553 [" 'Typically, a defendant who has established error under state law must demonstrate there is a reasonable probability that in the absence of the error he or she would have obtained a more favorable result.' "]; *People v. Watson* (1956) 46 Cal.2d 818, 836.) His analysis on that point, however, consists of one sentence and is wholly inadequate to establish prejudice.

Given that we lack a complete record from the trial, we could not assess the issue even if we were inclined to do so.

## DISPOSITION

The order denying the resentencing petition is affirmed.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


LAVIN, J.

WE CONCUR:


EDMON, P. J.


ADAMS, J.*

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.