Filed 6/26/23  P. v. Bowen CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JERRY BOWEN,<br><br>    Defendant and Appellant. | F083347<br><br>(Super. Ct. No. BF180086B)<br><br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Gregory A. Pulskamp, Judge.

Athena Shudde, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Michael A. Canzoneri, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

Pretending to be interested buyers, Jerry Bowen (appellant) and codefendant Vannoy Zeon Sutton[1] responded to Miguel Flores's online listing for the sale of used video games. At the agreed upon meeting place, they robbed Flores at gunpoint.

A jury convicted appellant and Sutton of robbery (Pen. Code, §§ 211, 212.5, subd. (c))[2] with enhancements for the use of a firearm (§ 12022.53, subds. (b), (e)(1)) and acting for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)), and other related offenses and enhancements. The trial court sentenced appellant to 22 years in state prison and Sutton to 17 years in state prison.

On appeal, appellant contends his gang enhancement findings must be vacated in light of newly enacted Assembly Bill No. 333 (2021–2022 Reg. Sess.) (Stats. 2021, ch. 699, §§ 1–5). Respondent concedes, and we accept respondent's concession. We reverse the true findings for appellant's gang enhancements, and we remand the matter to give the People the option of retrial.

Appellant also raises the related claim that his remaining convictions must be reversed for failure to bifurcate the gang allegations pursuant to section 1109, which was added to the Penal Code as part of Assembly Bill No. 333. We conclude any error in failing to bifurcate was harmless. We affirm.

## PROCEDURAL BACKGROUND

The Kern County District Attorney's Office filed an information charging appellant and Sutton as follows: count 1 – second degree robbery (§§ 211, 212.5, subd. (c); appellant and Sutton) with a use of a firearm enhancement (§ 12022.53, subd. (b); appellant and Sutton), a gang-related firearm enhancement (§ 12022.53, subd. (e)(1); appellant and Sutton), and a gang enhancement (§ 186.22, subd. (b)(1);

---

[1] Sutton filed a separate appeal (case No. F083379).

[2] All further statutory references are to the Penal Code unless otherwise indicated.

appellant and Sutton); count 2 – second degree robbery (§§ 211, 212.5, subd. (c); appellant only) with a gang enhancement (§ 186.22, subd. (b)(1)); count 3 – carrying a loaded firearm (§ 25850, subd. (a); appellant only) with the additional allegation that appellant was not the registered owner of the firearm (§ 25850, subd. (c)(6)) and a gang enhancement (§ 186.22, subd. (b)(1)); count 4 – carrying a loaded firearm (§ 25850, subd. (a); Sutton only) with the additional allegation that Sutton was not the registered owner of the firearm (§ 25850, subd. (c)(6)) and a gang enhancement (§ 186.22, subd. (b)(1)); count 5 – participation in a criminal street gang (§ 186.22, subd. (a); appellant and Sutton); and count 6 – carrying a loaded firearm (§ 25850, subd. (a); appellant and Sutton) with the additional allegation of active participation in a criminal street gang (§ 25850, subd. (c)(3)).

During trial, pursuant to a negotiated agreement, the People moved to amend the information to add count 7 – misdemeanor petty theft (§§ 484, subd. (a), 488; appellant only). Appellant then pleaded no contest to count 7, and in exchange, the People moved to dismiss count 2.

The jury found Sutton guilty as charged. The jury convicted appellant of all counts and allegations, except it was unable to reach a verdict on count 5, and the gang-related punishment provision in count 6.

## FACTUAL BACKGROUND

### I.     Appellant and Sutton Rob Flores at Gunpoint.

Flores posted a listing on an internet application called "LetGo," offering to sell several used video games. On January 30, 2020, he was contacted on LetGo by a person with the profile name "Bakersfield Buyer." They negotiated a price for the video games and agreed to meet after Flores's college class that evening at an address in a residential neighborhood.

Flores drove to the agreed upon address around 9:00 p.m. His car was equipped with a dashboard camera. He also brought his Glock 19 handgun, which was equipped with a laser light. The Glock was visible in the center console. Flores testified he brought the Glock for protection.

Flores parked on the street, and appellant and Sutton walked toward his car. Sutton asked to see the video games. Flores agreed, and Sutton placed a stack of cash on top of Flores's car. After Sutton finished looking through the games, he said something to appellant that Flores could not make out, and appellant drew a handgun and pointed it at Flores's face. Appellant sat Flores down in the driver's seat of his car and searched through his pockets. He took out Flores's cell phone and dropped it. He struggled to remove Flores's wallet from his pants pocket and dropped it. There was no cash inside of the wallet. At one point appellant stopped searching Flores and said, "Oh, I'm sorry. I have schizophrenia. Like sorry about that." Sutton said something to appellant, and appellant again raised the handgun and pointed it at Flores's face. Appellant then reached into the car and took Flores's gun from the center console. After appellant grabbed the gun, Sutton told appellant, "Blast him." Flores told appellant to "[c]hill," and appellant and Sutton ran off.

Flores drove away from the scene of the robbery and called the police. He met with officers in a nearby parking lot and gave a statement.

The video recording from Flores's dashboard camera was played for the jury. The recording does not include any audio. It shows appellant and Sutton approach Flores's car on foot, then run back the way they came approximately two minutes later. It does not capture the actual robbery. Although Flores's headlights were on, the video is too dark to see appellant's and Sutton's faces. However, their shoes and legs were illuminated and are visible.

Flores identified appellant and Sutton in court at trial. He also identified them in photographic lineups, which he was shown several weeks after the robbery.

4.

On cross-examination, Flores acknowledged he told police on the night of the robbery that the person who did not have the gun (Sutton) was the person who searched him and took his gun from the center console. He explained that he was nervous and "shooken up" on the night of the robbery and must have been confused. He also admitted that he knew it was illegal to carry a loaded firearm in his vehicle.

## II.      Traffic Stop and Recovery of Flores's Firearm.

On February 15, 2020, around 3:00 a.m., a police detective effectuated a traffic stop on a vehicle driven by Sutton for driving on the wrong side of the road. After the officer activated his overhead lights and siren, the vehicle turned into a cul-de-sac. Just before the vehicle came to a stop, the officer saw Sutton discard an object out of the driver's side window. Sutton then exited the vehicle and attempted to jump over a wall, but then obeyed commands from the officer to stop and get on the ground. There were four other people in the vehicle, including appellant, who was sitting in the left rear seat.

Officers recovered the object Sutton discarded from the window. It was Flores's Glock 19 handgun with the laser light still attached.

## III.     Appellant Takes a Pendant From a Rival Gang Member (Count 2).

On February 18, 2020, an officer saw appellant and a known Bloods gang member running through a parking lot. The officer detained them. He searched appellant and located an "S" shaped pendant in his pants pocket.

During the detention, the officer was contacted by Javar Gilmore, who demanded the return of his pendant, and provided a receipt for it. The officer gave the pendant to Gilmore.

Law enforcement knew Gilmore to be a member of the Country Boy Crips criminal street gang, which is a rival of the Bloods. The letter "S" is a symbol that gang members associate with that gang.

Officers subsequently obtained video surveillance footage from a nearby business. The video shows appellant approach Gilmore. Gilmore throws the first punch, and a physical exchange ensues. Afterward, appellant appears to pick up an object off the ground.

As noted above, prior to the close of evidence the People agreed to dismiss count 2 and allow appellant to plead no contest to misdemeanor petty theft (count 7). The only explanation offered by the parties was the prosecutor's statement that the plea agreement was "based on the evidence that we have so far." The trial court instructed the jury that the underlying evidence was still admissible and relevant "to the extent that that incident provides some insight into the elements that need to be proven in other counts," but that it could not be considered as character evidence.

## IV. Internet Evidence.

Detectives obtained records from LetGo via search warrant and discovered the "Bakersfield Buyer" account was registered to Sutton's Google e-mail address. They also obtained records from Google, which showed the LetGo application was installed onto a cell phone using Sutton's e-mail address when the phone was located at 129 Cypress Street in Bakersfield. The detectives were familiar with Sutton and knew he resided at that address, which is located approximately one block from the scene of the robbery.

Detectives also obtained records for appellant's and Sutton's Facebook accounts via search warrant. The records showed they had been "friends" on Facebook since April 2019, and that they communicated on Facebook regularly. Their accounts contained numerous photos of them together. In several of these photos, appellant and Sutton were with other Bloods gang members, wearing gang colors, and showing gang signs. One of these photographs shows appellant and Sutton together in front of Sutton's residence at 129 Cypress Street. Another photograph shows Sutton holding Flores's Glock handgun,

which is identifiable by the distinctive laser light attachment. In another photograph, appellant is standing with Sutton and wearing distinctive red shoes with white soles. Appellant can be seen wearing the same shoes in the dashboard camera footage from Flores's car.

The Facebook records also included conversations indicating involvement in criminal activity. In October 2019, Sutton sent appellant a message asking, "Did you bring [my] banger back yet?" Also in October 2019, Sutton had a conversation with "Mudd Ball," who appears to be Sutton's stepfather. They discussed committing crimes for the benefit of the Bloods gang, and Sutton reaffirmed that he is a "Crip Killer all the way." In December 2019, Sutton had a conversation with "Jeff Brown," who was later determined to be appellant's cousin, regarding luring potential robbery victims by listing items for sale online on an application like LetGo.

## V.     Gang Evidence.

In addition to the Facebook records described above, the People presented extensive evidence that appellant and Sutton were active members of the Bloods criminal street gang. This included evidence that appellant and Sutton were targeted in shootings by rival gang members, and contacts with law enforcement during which appellant and Sutton were associating with known gang members and wearing gang clothing. Based on this evidence, the People's gang expert opined that appellant and Sutton were active members of the Bloods criminal street gang.

The gang expert also testified that the primary activities of the Bloods gang include homicide, assault with a deadly weapon, robbery, burglary, and firearm possession. He explained that firearm possession is especially important to status within the gang because it allows a gang member to "put in work," which includes shooting rival gang members and committing crimes such as burglary and robbery, which benefits the gang.

7.

To establish that the Bloods gang engages in a pattern of criminal activity, the gang expert described three predicate offenses committed by Bloods gang members. In each predicate offense, an individual Bloods gang member was convicted of illegal firearms possession. The predicate offenses did not involve appellant or Sutton. The gang expert offered no opinion on how the predicate offenses benefitted the Bloods, and there was no evidence any predicate offense was committed by more than one person.

Based on a hypothetical question mirroring the facts of the Flores robbery, the gang expert opined that the robbery was committed for the benefit of the Bloods gang. He explained that the robbery would enhance the reputation of the gang and instill fear in both rival gang members and the community generally. Additionally, any property obtained during a robbery would benefit the gang financially. With respect to firearm possession, the gang expert stated that possession of a firearm bolsters the status of an individual gang member within the gang because it can be used to commit crimes and intimidate rivals.

## VI. Sutton's Testimony.

Sutton elected to testify in his own defense and claimed no robbery occurred. He admitted to being a gang member but claimed he was a member of the "Warlord Piru" gang and not the Bloods gang. He identified himself and appellant in the dashboard camera video. He claimed that he initially intended to buy video games from Flores, but when he arrived at the meeting place with appellant, Flores offered to sell his handgun. He testified he agreed to buy the handgun, and Flores stated he would have to report it stolen because it was registered in his name. Flores told them about his dashboard camera, so appellant and Sutton ran away in view of the camera as part of a "little fake scene" to make it look like a robbery.

## DISCUSSION

**I.** **The Record is Insufficient to Sustain the Gang Enhancements Under Newly Enacted Assembly Bill No. 333. We Reverse and Remand for Further Proceedings.**

While this appeal was pending, the Legislature enacted Assembly Bill No. 333, which became effective on January 1, 2022. Assembly Bill No. 333 amended section 186.22 to modify the showing necessary to sustain gang offenses and enhancements. Appellant contends Assembly Bill No. 333 applies retroactively to this case, and that the true findings on his gang enhancements must be reversed. He argues the evidence at trial was insufficient under the law as amended, and that the jury instructions did not reflect said amendments.

Respondent concedes Assembly Bill No. 333's amendments to section 186.22 apply retroactively to this case. (Stats. 2021, ch. 699, §§ 3–4.) We agree. As we explained in *People v. Ramos* (2022) 77 Cal.App.5th 1116, 1126, this aspect of Assembly Bill No. 333 "was an ameliorative change in the law that applies retroactively to cases not yet final on appeal" because it "increased the evidentiary burden necessary to prove a gang-related enhancement." Our Supreme Court subsequently reached the same conclusion in *People v. Tran*, holding that "[t]hese changes have the effect of 'increas[ing] the threshold for conviction of the section 186.22 offense and the imposition of the enhancement,' with obvious benefit to defendants like Tran." (*People v. Tran* (2022) 13 Cal.5th 1169, 1207 (*Tran*).)

Respondent also concedes appellant's gang enhancement findings must be vacated because the evidence at trial was insufficient under section 186.22 as amended. Again, we agree. Each predicate offense in this case involved conduct by only one gang member, and the People offered no evidence or expert opinion that the predicates benefitted the gang.

9.

Accordingly, we vacate appellant's gang enhancement findings. On remand, the People will have the option to retry the vacated enhancements. (*People v. Sek* (2022) 74 Cal.App.5th 657, 669 [" 'Because we do not reverse based on the insufficiency of the evidence required to prove a violation of the statute as it read at the time of trial, the double jeopardy clause of the Constitution will not bar a retrial.' "].)

## II.  Any Presumed Error Resulting from the Failure to Bifurcate Gang Allegations Pursuant to Section 1109 was Harmless.

In addition to amending section 186.22, Assembly Bill No. 333 also created section 1109. This section requires that a trial court conduct a bifurcated proceeding on the truth of gang enhancements alleged under section 186.22, subdivision (b) or (d), if requested by the defense. (§ 1109, subd. (a).) It also requires a bifurcated trial for any charge of participation in a criminal street gang (§ 186.22, subd. (a)). (§ 1109, subd. (b).)

Appellant claims the trial court's failure to comply with section 1109 requires reversal of his underlying convictions. Respondent argues that section 1109 applies prospectively only, and that lack of bifurcation was harmless error. As we explain below, we agree that the trial court's failure to comply with section 1109 was harmless because there is no basis to conclude bifurcation would have affected the outcome of the trial. Accordingly, we need not consider whether section 1109 applies retroactively.[3]

### A.  Relevant Procedural Background.

Prior to trial, appellant and Sutton moved to bifurcate the gang allegations under then existing law, contending the gang evidence was highly prejudicial and not relevant to the underlying charges. The trial court denied the motion, concluding the gang evidence was relevant to the motive to commit the underlying offenses.

---

[3]  The question of whether section 1109 applies retroactively to cases that are not yet final is currently under review by the California Supreme Court in *People v. Burgos* (2022) 77 Cal.App.5th 550, review granted July 13, 2022, S274743.

## B.    We Apply the *Watson* Standard.

Appellant contends that the failure to bifurcate pursuant to section 1109 was structural error requiring reversal.  Alternatively, appellant claims the error is subject to the more stringent "beyond a reasonable doubt" standard for federal constitutional error set forth in *Chapman v. California* (1967) 386 U.S. 18, 24 (*Chapman*).  Respondent, on the other hand, argues the standard of review set forth in *People v. Watson* (1956) 46 Cal.2d 818, 836 (*Watson*) is appropriate.  Under the *Watson* standard, which applies to errors of state law, reversal is not required unless it is reasonably probable the defendant would have obtained a more favorable result had the error not occurred.  (*Watson*, *supra*, 46 Cal.2d at p. 836.)

We agree with respondent.  Appellant's right to bifurcation under section 1109 is purely statutory.  " 'Typically, a defendant who has established error under state law must demonstrate there is a reasonable probability that in the absence of the error he or she would have obtained a more favorable result.' " (*People v. Anzalone* (2013) 56 Cal.4th 545, 553; accord, *People v. Epps* (2001) 25 Cal.4th 19, 29 [where the error "is purely one of state law, the *Watson* harmless error test applies"].)  The denial of the motion to bifurcate is also an issue of state law, and therefore subject to the same harmless error standard.  (*People v. Flinner* (2020) 10 Cal.5th 686, 713; *People v. Pinholster* (1992) 1 Cal.4th 865, 931–932 [failure to sever robbery count from other charges subject to *Watson* standard] disapproved on other grounds in *People v. Williams* (2010) 49 Cal.4th 405, 459; see *People v. Champion* (1995) 9 Cal.4th 879, 923 [failure to exclude gang evidence subject to *Watson* standard], disapproved on other grounds in *People v. Combs* (2004) 34 Cal.4th 821, 860.)

Recently, in *Tran¸* our high court held that the failure to bifurcate pursuant to section 1109 is not structural error.  (*Tran*, *supra*, 13 Cal.5th at pp. 1208–1210.)  The court also rejected the appellant's argument that the *Chapman* standard for federal constitutional error applies, reasoning that the admission of gang evidence in that case

11.

was not so prejudicial that it rendered the trial " 'fundamentally unfair.' " (*Tran*, *supra*, 13 Cal.5th at p. 1209.) Instead, it evaluated the trial court's failure to bifurcate under the *Watson* standard. (*Tran*, at pp. 1209–1210.)

Appellant bases his claim of fundamental unfairness on uncodified language from Assembly Bill No. 333 that gang evidence "can be unreliable and prejudicial to a jury because it is lumped into evidence of the underlying charges which further perpetuates unfair prejudice in juries and convictions of innocent people." (Stats. 2021, ch. 699, § 2, subd. (d)(6).) However, the fact that the Legislature enacted Assembly Bill No. 333 to make trials involving gang allegations fairer does not mean that admission of gang evidence renders a trial fundamentally unfair. As *Tran* explained, "although the admission of gang evidence may sometimes result in fundamental unfairness [citation], this is not always the case. We have held that gang evidence, even if not admitted to prove a gang enhancement, may still be relevant and admissible to prove other facts related to a crime." (*Tran*, *supra*, 13 Cal.5th at p. 1208.)

Aside from this statement of legislative intent, appellant does not articulate how the gang evidence admitted in his trial was not just prejudicial but resulted in fundamental unfairness. For the reasons discussed below, we see no basis to conclude the admission of gang evidence rendered the trial fundamentally unfair, or otherwise implicated appellant's federal constitutional rights. (See *Tran*, *supra*, 13 Cal.5th at p. 1209.) Accordingly, we apply the *Watson* standard.

### C. Any Presumed Error was Harmless.

In assessing prejudice under *Watson*, "an appellate court may consider 'whether the evidence supporting the existing judgment is so *relatively* strong, and the evidence supporting a different outcome is so *comparatively* weak, that there is no reasonable probability the error of which the defendant complains affected the result.' " (*People v. Rogers* (2006) 39 Cal.4th 826, 870.)

Here, the evidence establishing appellant's guilt of the underlying charges was overwhelming. Flores identified appellant and Sutton in photographic lineups and in court at trial. Two weeks after the robbery, Sutton was caught attempting to discard Flores's stolen firearm during a traffic stop, with appellant in the back seat. Records from LetGo obtained by law enforcement showed that Sutton was the owner of the "Bakersfield Buyer" account used to contact Flores to set up the robbery. Records from Facebook included a photo of Sutton posing with Flores's gun, and a photo of appellant wearing the same distinctive red shoes seen in the dashboard camera recording. Additionally, the records contained a conversation between Sutton and appellant's cousin discussing setting up robberies by listing items for sale online; the same modus operandi employed in the robbery of Flores. Finally, Sutton testified that he and appellant were the two individuals who met with Flores, and he identified himself and appellant in the dashboard camera recording.

Appellant contends that had the gang allegations been tried separately, it is likely that the jury would have believed Sutton's testimony that he purchased the handgun from Flores and that no robbery occurred. We disagree. During closing argument, the prosecutor argued Sutton's testimony was not credible, and that his claim that he purchased Flores's firearm was not reasonable. The prosecutor explained that if Flores needed to feign a robbery to report the handgun stolen, there was no reason for Flores to later identify appellant and Sutton to the police. There was also no need to film appellant and Sutton fleeing on the dashboard camera. Moreover, Sutton's claim that he only intended to purchase video games from Flores was wholly undermined by his online conversation with appellant's cousin about using online listings to set up robberies. The verdict, therefore, demonstrates the jury agreed and rejected Sutton's testimony, and the circumstantial evidence clearly supports the jury's decision.

Appellant also argues that the "gang evidence overlay" that Bloods gang members commit violent offenses using firearms convinced the jury of his guilt of the underlying

13.

offenses. We agree that evidence of gang membership and prior criminal acts inherently carries some risk that a jury will improperly infer that a defendant has a propensity to commit criminal offenses. (See *People v. Hernandez* (2004) 33 Cal.4th 1040, 1049.) However, nothing in Assembly Bill No. 333 or section 1109 "limits the introduction of gang evidence in a bifurcated proceeding where the gang evidence is relevant to the underlying charges." (*People v. Ramos*, *supra*, 77 Cal.App.5th at p. 1132.) This includes evidence that is offered for identity, motive, or intent (among others) under Evidence Code section 1101, subdivision (b). Here, some of the gang evidence was relevant to appellant's and Sutton's motive. This was particularly true in count 2, where the evidence showed appellant took a pendant of a gang symbol from a rival gang member. It was also relevant to identity, as it buttressed the connection between appellant and Sutton that was central to the People's case. Because it is very likely that at least some of the gang evidence admitted in appellant's trial would still have been admissible in a bifurcated trial, the potential for prejudice is significantly limited. (See *People v. Hernandez*, *supra*, 33 Cal.4th at pp. 1049–1050.)

We also observe that the jurors were given a limiting instruction not to consider the gang evidence for any improper purpose, including that appellant "is a person of bad character or that he has a disposition to commit crime." (See CALCRIM No. 1403.) We presume the jury followed this instruction. (See *People v. Franklin* (2016) 248 Cal.App.4th 938, 953 ["We presume that the jury followed these limiting instructions [regarding considering gang evidence for limited purpose], and there is nothing in this record to rebut that presumption."].)

Finally, any inference of prejudice stemming from the gang evidence is negated by the fact that the jury was unable to reach a verdict on all counts and allegations. Specifically, the jury deadlocked as to appellant on count 5, active participation in a criminal street gang (§ 186.22, subd. (a)), and the gang-related punishment provision as to count 6 (§ 25850, subd. (c)(3)). This result demonstrates the jury was not simply

14.

overwhelmed by the presentation of the gang evidence, but that it closely and carefully examined the evidence supporting each allegation. (See *People v. Ramos*, *supra*, 77 Cal.App.5th at pp. 1131–1132 ["It is apparent from this record the jury did not simply rely on the gang evidence to convict the defendants of the charged crimes."].)

Considering the strength of the evidence, the use of a limiting instruction, and the likelihood that some gang evidence would still have been admitted even if the gang allegations had been bifurcated, it is not reasonably probable that the admission of gang evidence impacted the result of appellant's trial. Therefore, we conclude the trial court's failure to comply with section 1109 was harmless under *Watson*.

## III.  Appellant May Address the Applicability of *People v. Tirado* on Remand.

While this appeal was pending, our Supreme Court decided *People v. Tirado* (2022) 12 Cal.5th 688 (*Tirado*), holding that section 12022.53, as amended by Senate Bill No. 620 (2017–2018 Reg. Sess.) (Stats. 2017, ch. 682, § 2), "permits a court to strike [a] section 12022.53[, subdivision] (d) enhancement found true by the jury and to impose a lesser uncharged statutory enhancement instead." (*Tirado*, *supra*, at p. 692.) According to the Supreme Court, "the Legislature has permitted courts to impose the penalties under section 12022.53[,subdivision] (b), (c), or (d) so long as the existence of facts required by the relevant subdivision has been alleged and found true." (*Tirado*, *supra,* 12 Cal.5th at p. 702.)

Appellant argues *Tirado* authorizes a trial court to impose a lesser uncharged section 12022.5, subdivision (a) firearm enhancement, and therefore the matter should be remanded for the trial court to exercise its discretion to reduce his section 12022.53, subdivision (b) enhancement.

We need not address whether *Tirado* is applicable here because we have already determined remand for further proceedings on the vacated gang enhancements is necessary. Regardless of how the parties elect to proceed on remand, appellant will be

15.

entitled to " 'a full resentencing as to all counts … so the trial court can exercise its sentencing discretion in light of the changed circumstances.' " (*People v. Buycks* (2018) 5 Cal.5th 857, 893.)  Appellant will have the opportunity to raise his claims regarding the applicability of *Tirado* at his resentencing hearing.

We take no position on how the trial court should exercise its sentencing discretion when it resentences appellant.

## DISPOSITION

The true findings in counts 1 and 3 regarding the gang enhancement are vacated. Appellant's sentence is vacated, and this matter is remanded for further proceedings.  The People shall have the option to retry appellant regarding the gang enhancements in counts 1 and 3.  If the People do not bring appellant to retrial within the time limits of section 1382, subdivision (a)(2), the trial court shall proceed to resentence appellant accordingly.  In all other respects, appellant's judgment is affirmed.


LEVY, J.

WE CONCUR:


HILL, P. J.


MEEHAN, J.